STATE EX REL. SAMUEL HOROWITZ v. THOMAS JONES.[1]

June 17, 1955.

No. 36,546.

*Kenneth J. Enkel, A. Ray Segal,* and *Hyman H. Cohen,* for appellant.

*Michael J. Dillon,* Hennepin County Attorney, *George M. Scott,* Hennepin County Attorney, *Bruce C. Stone,* Assistant County Attorney, *William J. McCauley,* Milwaukee County, Wisconsin, District Attorney, *Joseph E. Tierney,* Deputy District Attorney, for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court quashing and discharging a writ of habeas corpus.

[1] Reported in 71 N. W. (2d) 839.

This case involves an extradition proceeding against relator, Samuel Horowitz.

Relator testified that in the past he had been an organizer for the communist party and that, because of his affiliation with that organization, it became impossible for him to obtain a job. Therefore, in 1953 he left St. Paul, where he had been residing, and went to Milwaukee, Wisconsin. He admits that, while in Wisconsin, he used the name Paul A. Brown in order to obtain a job. He remained in Wisconsin until January 2, 1954, when he returned to Minneapolis for the purpose of getting a job in that city, where he desired to reside with his friends.

On May 17, 1954, relator was confined in the Minneapolis workhouse as the result of pleading guilty in Minneapolis municipal court to two charges, namely, registering a car under a fictitious name and using a fictitious name in order to obtain a driver's license. He was given the maximum sentence of 90 days on each of the two counts or a total sentence of 180 days.

The record further indicates that on the morning of October 15, 1954, two days before relator was to be released, the then governor of Minnesota received extradition papers from the state of Wisconsin. Without going into complete detail, these papers state in substance that "Samuel A. Horowitz, alias Paul A. Brown" is charged in the state of Wisconsin with the crime of "False statement to obtain certificate of title" arising out of the violation of Wis. Stat. 1953, § 85.01(8)(e), in connection with obtaining a transfer of title to an automobile under a false name. These papers also state that this act constitutes a felony in Wisconsin and is punishable by a fine not exceeding $5,000 or imprisonment not exceeding five years or both.

Pursuant to the extradition papers, a rendition warrant was signed by the then governor of Minnesota and served upon relator at 11:30 o'clock that same morning. Relator contends in his brief that, since he was served with this warrant, he has continuously requested a hearing before the governor but has been unable to obtain one.

On October 19, 1954, relator petitioned the district court for a writ of habeas corpus. The petition was granted, and a hearing

on the writ was held the next day. On October 21, the district court entered an order quashing and discharging the writ. It is from that order that the present appeal was taken.

On November 12, 1954, an order of reference was made by this court appointing the Honorable W. A. Schultz as referee to take evidence. This was done. Since this is an appeal involving a writ of habeas corpus, the matter is before this court *de novo* upon the evidence taken at the hearing before the referee. M. S. A. 589.30.

The sole question for our determination is whether relator was deprived of life, liberty, or property without due process of law by the refusal of the governor of Minnesota to grant him a hearing.

Minnesota has adopted the uniform criminal extradition act (§§ 629.01 to 629.29). Section 629.03 sets out the conditions necessary for the governor to recognize a demand for extradition. Section 629.10 requires that the accused be given reasonable time to apply for a writ of habeas corpus to test the legality of his arrest. Nowhere in our statutes is the governor required to grant a hearing to the accused.

Relator does not attack the sufficiency of the extradition papers. Rather, it is his contention that, because he has not been granted a hearing by the governor, he has been deprived of life, liberty, and property without due process of law; therefore, that the writ of habeas corpus should be made absolute.

It has been held that proceedings by the governor in determining whether to recognize the demand for extradition are summary in nature[2] and, further, that the accused has no constitutional right to demand a hearing.[3] Counsel for relator admits in his brief the existence of these precedents and agrees that in most extradition

[2]Munsey v. Clough, 196 U. S. 364, 25 S. Ct. 282, 49 L. ed. 515; Lee Won Sing v. Cottone, 74 App. D. C. 374, 123 F. (2d) 169; Waggoner v. Feeney, 220 Ind. 543, 44 N. E. (2d) 499.

[3]Munsey v. Clough, 196 U. S. 364, 25 S. Ct. 282, 49 L. ed. 515; Johnson v. Scarborough (S. D. Tex.) 88 F. Supp. 523; Collins v. Golden (D. Neb.) 95 F. Supp. 251; Gerrish v. State (D. Me.) 97 F. Supp. 527; United States ex rel. Darcy v. Superintendent of County Prisons (3 Cir.) 111 F. (2d) 409; Raftery ex rel. Huie Fong v. Bligh (1 Cir.) 55 F. (2d) 189.

cases a hearing before the governor of the asylum state is unnecessary and could very well amount to an interference with the orderly administration of justice. However, he argues that the particular facts and circumstances of this case bring it outside the rule applicable to most situations. He takes the position that the prevailing public hysteria directed at a person associated with communism creates a condition whereby the only possible way to protect relator's rights is to hold that the governor of Minnesota should have granted him a hearing. Relator also contends that he has been discriminated against. As examples of discrimination he cites the fact that he had been sentenced to 90 days on each charge in municipal court and that the proceedings on the extradition papers took only three and one-half hours from the time the papers were received in the governor's office until relator was served in the Minneapolis city jail.

There is nothing in the record to show that the municipal court violated the law in imposing the sentences nor is there any showing that the expeditious processing of the papers in the governor's office and subsequent service on relator violated any precedent. We have carefully considered the proceedings in the matter before us, including counsel's argument on behalf of relator, and it is our opinion that relator was not deprived of life, liberty, or property without due process of law as a result of the governor's refusal to grant him the hearing requested. Clearly, the matter was one within the discretionary power of the governor. Relator's right to test the legality of his arrest has already been granted in the habeas corpus proceedings in district court. There is no reason to believe from the record before us that relator's rights of due process under the constitution will not be fully preserved and granted him if returned to the state of Wisconsin. Counsel's broad statement to the effect that relator has been wronged as a result of a so-called hysteria is not justified by the record before us, nor are such statements sufficient for us to abrogate the well-established principles of law with reference to matters of extradition.

We conclude, after having carefully considered the evidence taken by the Honorable W. A. Schultz, that the trial court reached the correct conclusion in discharging the writ of habeas corpus.

Affirmed.

UPON PETITION FOR REARGUMENT.

On July 13, 1955, the following opinion was filed:

FRANK T. GALLAGHER, JUSTICE.

Relator applied for a rehearing in the above entitled matter through a different attorney from the one who presented the matter to the court on oral argument. Briefly, the grounds on which he makes his application are that the relator was not substantially charged with a crime in the state of Wisconsin and that the alleged charge against him did not constitute a crime; that the record conclusively establishes as a matter of law that he did not commit a crime in either the state of Wisconsin or Minnesota; and that he is therefore being unlawfully restrained from his liberty and freedom.

Respondent objects to the granting of a rehearing principally on the grounds that the reasons for the application as advanced by relator are now raised for the first time and not properly before the court. As stated in the above opinion, the appeal is from an order of the district court quashing and discharging the writ of habeas corpus, and the sole question presented for our determination was whether the relator was deprived of life, liberty, or property without due process of law by the refusal of the governor of Minnesota to grant him a hearing in connection with an extradition proceeding. We held that he was not deprived of any such rights as a result of the governor's refusal to grant a hearing as the matter was within the discretionary power of the governor.

It is apparent upon examination of the records before us in this case that not only this court but all of the other courts which have considered the various phases of the case have been exceedingly fair, patient, and tolerant in connection with the entire proceedings. Relator's right to contest the legality of his arrest has already been granted in the habeas corpus proceedings in district court. Two

Minnesota governors have seen fit to deny a hearing in connection with the extradition matter which was strictly within their discretionary rights.

Now we are asked in effect to consider a petition for reargument on an entirely new question as to whether relator is substantially charged with a crime in the state of Wisconsin. This we cannot do under the rules. If relator's contentions are correct with reference to the alleged charge against him in that state, we have every reason to believe he will be afforded every constitutional protection to which he is entitled if and when he appears before the proper courts in Wisconsin.

The petition for reargument is denied.