# STATE v. JAMES D. FLORENCE.

239 N. W. 2d 892.

January 9, 1976—No. 46382.

*Mark Reinhardt,* for petitioner.

*William B. Randall,* County Attorney, and *Darrell C. Hill,* Assistant County Attorney, for respondent.

SHERAN, CHIEF JUSTICE.

I.

In felony proceedings before the District Court of Ramsey County, defendant moved to dismiss the complaints on the ground that there was an insufficient showing of probable cause to believe that he had committed the offenses charged. The motion was denied, and defendant sought a writ of prohibition from this court. By order dated November 21, 1975, we denied the relief requested and indicated that this opinion would follow.

The district court based its denial of defendant's motion to dismiss on the "entire record," which included hearsay which would not have been admissible at trial. For purposes of this decision, we will assume that the showing of probable cause would have been insufficient without this evidence. Although defendant offered evidence which challenged the credibility of hearsay statements incorporated in the "entire record," he did not produce witnesses in support of his motion whose testimony, if believed, would have exonerated him. The question raised by this application for extraordinary relief was whether the order of the district court should be reversed or, if not, whether the state should be required to establish probable cause by substantial evidence that would be admissible at trial. See, Rule 11.03, Rules of Criminal Procedure.

444

## II.

We declined to interfere with the action taken by the district court because:

■ The preliminary hearing previously required by Minn. St. 629.50 became obsolete when the Minnesota Rules of Criminal Procedure were adopted; [1]

■ The safeguards to the defendant previously provided by the preliminary hearing are now afforded by the rules. See especially Rule 9, which provides for extensive disclosure and discovery prior to the Rule 11 omnibus hearing, and Rule 11.03, which permits a motion to dismiss for lack of probable cause;

■ In the ordinary case, defendant will be protected from the burdens of an unjustified trial by the trial judge's assessment of probable cause based on "the entire record including reliable hearsay in whole or in part." Rule 11.03. In the extraordinary case, where the defendant offers evidence in support of his motion to dismiss for lack of probable cause in the form of witnesses subject to cross-examination whose testimony, if believed, would exonerate him, an order denying the motion to dismiss must be based, with respect to any element of the offense so contested, upon "substantial evidence that would be admissible at trial except as otherwise provided in Rule 18.06, subd. 1." Rule 11.03;

■ Application of Rule 11.03 in this manner will inhibit the use of the probable cause hearing as a substitute for the rights of disclosure and discovery made available by the new rules and will, at the same time, provide an adequate safeguard in cases where the defendant seeks to establish absence of guilt affirmatively;

■ Adherence to this interpretation of Rule 11.03 will make it possible to develop a fund of experience between now and July 1, 1976, on the basis of which objective evaluation of the rule and the possible need for its modification can be made.

---

[1] Minn. St. 629.50 was superseded by Rules 5 and 11, Rules of Criminal Procedure.

Our decision with respect to the proper interpretation of Rule 11.03 is based upon several distinct considerations.

1. Before the adoption of our Rules of Criminal Procedure, the right of a criminal defendant to participate in a pretrial hearing to test probable cause was governed by Minn. St. 629.50, which provided:

"The magistrate before whom any person shall be brought upon a charge of having committed an offense shall, as soon as may be, examine the complainant and the witnesses in support of the prosecution, on oath, in the presence of the party charged, in relation to any pertinent matter connected with such charge, after which the witnesses for the prisoner, if he has any, shall be sworn and examined, and he may be assisted by counsel in such examination, and also in the cross-examination of the witnesses in support of the prosecution."

Although reference to this section of the statutes has been made in a number of our cases,[2] its purpose and function were never defined in detail. The most extensive statement appears in State ex rel. Hastings v. Bailey, 263 Minn. 261, 266, 116 N. W. 2d 548, 551 (1962), where this court said:

"It may be said generally that the purpose of preliminary examination is to inquire concerning the commission of the crime and the connection of the accused with it in order that he may

---

[2] State v. Kluck, 299 Minn. 161, 217 N. W. 2d 202 (1974); State v. Clark, 277 Minn. 502, 151 N. W. 2d 253 (1967); State v. Zirbes, 274 Minn. 288, 143 N. W. 2d 212 (1966); State ex rel. Ballinger v. Tahash, 273 Minn. 177, 140 N. W. 2d 53 (1966); State v. Osgood, 266 Minn. 315, 123 N. W. 2d 593 (1963); State ex rel. Welper v. Rigg, 254 Minn. 10, 93 N. W. 2d 198 (1958); State ex rel. Horowitz v. Jones, 245 Minn. 125, 71 N. W. 2d 839 (1955); State ex rel. Jeffrey v. Tessmer, 211 Minn. 55, 300 N. W. 7 (1941); State ex rel. Krinke v. Felix, 171 Minn. 140, 213 N. W. 556 (1927); State ex rel. Graves v. Haugen, 124 Minn. 456, 145 N. W. 167 (1914); State ex rel. Delevan v. Justus, 85 Minn. 114, 88 N. W. 415 (1901); State v. Hayden, 35 Minn. 283, 28 N. W. 659 (1886); In re Snell, 31 Minn. 110, 16 N. W. 692 (1883).

be informed of the nature and character of the offense with which he is charged; to determine if there is probable cause for believing the defendant guilty; and to fix bail. It is not necessary for the state to prove the defendant's guilt beyond a reasonable doubt. *The state is not required to disclose at the preliminary hearing all of its evidence relating to the commission of the offense.* It is required to submit only sufficient evidence to establish probable cause. *It has been said that the test of probable cause is whether the evidence worthy of consideration, in any aspect for the judicial mind to act upon, brings the charge against the prisoner within reasonable probability."* (Italics supplied.)

2. The probable cause hearing governed by Minn. St. 629.50 before it was superseded by Rule 11 was not peculiar to this state. In varying forms it had come to be accepted procedure in most if not all of the states and in the Federal system. Despite its ubiquitous presence, relatively little was written about the function of the probable cause hearing in our criminal justice system until recently.[3] It appears that a probable cause hearing may serve these functions:

(a) To secure the release of a person illegally detained;

(b) To relieve the defendant from the expense and ignominy

---

[3] Law review articles on the preliminary hearing include: Note, 83 Yale L. J. 771; Graham and Letwin, *The Preliminary Hearing in Los Angeles: Some Field Findings and Legal-Policy Observations,* 18 U. C. L. A. L. Rev. 635, 916; Anderson, *The Preliminary Hearing—Better Alternatives or More of the Same?,* 35 Mo. L. Rev. 281; Comment, 30 U. of Pittsburgh L. Rev. 481; Weinberg and Weinberg, *The Congressional Invitation to Avoid the Preliminary Hearing: An Analysis of Section 303 of the Federal Magistrates Act of 1968,* 67 Mich. L. Rev. 1361; Comment, 116 U. of Pa. L. Rev. 1416; Comment, 56 Geo. L. J. 191; Comment, 39 U. of Colo. L. Rev. 580; Note, 15 U. of Kan. L. Rev. 374; Napley, *The Case for Preliminary Inquiries,* 1966 Crim. L. Rev. 490; Note, 51 Iowa L. Rev. 164; Miller and Dawson, *Non-Use of the Preliminary Examination: A Study of Current Practices,* 1964 Wis. L. Rev. 252. See, also, Kamisar, LaFave & Israel, Modern Criminal Procedure (4 ed.) pp. 957 to 1003.

of a prosecution on the merits in cases where the known facts, from whatever source derived, do not justify a trial;

(c)  To uncover at an early stage cases based on false assertions springing from misunderstanding, mistake, or malevolence;

(d)  To enable the prosecutor to assess the credibility of prosecution witnesses when called to the stand;

(e)  To compel unwilling witnesses to appear and be recorded;

(f)  To enable the defendant to engage in a form of discovery to reveal in advance of trial the evidentiary basis of the state's claims against him.[4]

Depending on the function(s) considered appropriate to a probable cause hearing, judges in this state and across the country

---

[4] A distinction is often drawn between the "primary" and "collateral" functions of the preliminary hearing. See, e. g., Graham and Letwin, *supra,* footnote 3, pp. 639 to 641. The primary function is that of screening out cases which, for one reason or another, ought not to be prosecuted. A classic statement of the preliminary hearing's primary function is contained in Theis v. State, 178 Wis. 98, 103, 189 N. W. 539, 541 (1922):

"The object or purpose of the preliminary investigation is to prevent the hasty, malicious, improvident and oppressive prosecutions, to protect the person charged from open and public accusations of crime, to avoid both for the defendant and the public the expense of a public trial, and to save the defendant from the humiliation and anxiety involved in a public prosecution, and to discover whether or not there are substantial grounds upon which a prosecution may be based."

The two main collateral functions of the preliminary hearing are its use by the defendant as a device for discovery and deposition (perpetuation of testimony). Kamisar, LaFave & Israel, *supra,* footnote 3, p. 960; Graham and Letwin, *supra,* footnote 3, pp. 916 to 931. Other collateral functions include use of the preliminary hearing as a substitute for a full trial, as a mechanism for determining the legality of the defendant's detention, as a forum for constitutional adjudication, as an occasion for plea bargaining, and as a means for preparing a foundation for a guilty plea and for sentencing. Graham and Letwin, *supra,* footnote 3, pp. 931 to 953; Anderson, *supra,* footnote 3, pp. 284 to 289; Kamisar, LaFave & Israel, *supra,* footnote 3, p. 966.

who have been given the responsibility for determining the question of probable cause have (i) required or permitted the witnesses whose testimony was essential to the prosecution to appear and give testimony under oath; (ii) permitted the adverse party to test the reliability of such witnesses by cross-examination; (iii) permitted the defendant to declare his innocence under oath and produce witnesses who, if believed, would exonerate him; (iv) compelled unwilling witnesses to appear and be recorded; and (v) required or permitted the details and basis of the accusation made against the defendant to be produced regardless of whether the evidence would be admissible at trial in whole or in part. Thus, in Minnesota, although the language of Minn. St. 629.50 put considerable emphasis on evidence of a kind which would be admissible at trial, this court, in State ex rel. Jeffrey v. Tessmer, 211 Minn. 55, 300 N. W. 7 (1941), held that a finding of probable cause could be based on testimony which would not support a conviction, i. e., the testimony of an uncorroborated accomplice.

3. Likewise, although there was nothing in § 629.50 or in the decisions of this court which authorized the use of the probable cause hearing as a discovery device, its use for that purpose was permitted in some of the courts of this state. This extension of the probable cause hearing can be explained, or is at least understandable, in light of decisions in Federal courts which preceded the adoption of Rule 5.1 of the Federal Rules of Criminal Procedure.[5] The movement in the Federal courts toward per-

---

[5] Rule 5.1, Federal Rules of Criminal Procedure, was added to the criminal rules in 1972. Prior to the adoption of Rule 5.1, preliminary hearings were governed by Rule 5(c). In pertinent part, Rule 5(c) read as follows:

"* * * If the defendant does not waive [preliminary] examination, the commissioner shall hear the evidence within a reasonable time. The defendant may cross-examine witnesses against him and may introduce evidence in his own behalf. If from the evidence it appears to the commissioner that there is probable cause to believe that an offense has been committed and that the defendant has committed it, the commis-

mitting the probable cause hearing to serve as a discovery device was centered in the United States Court of Appeals for the District of Columbia, and decisions of that court disclosed marked differences of opinion among the judges as to the purpose and objective of the probable cause hearing. Some of the judges of that court were convinced that a defendant should be afforded extensive disclosure and discovery before trial and that the probable cause hearing was an expedient time and place to achieve this objective. Other members of that court were of the opinion that the use of a probable cause hearing supervised by judicial authority as a discovery forum was unwise and that the problems of disclosure and discovery should be dealt with more directly.[6]

The Federal Magistrates Act, P. L. 90-578, Title III, § 303(a), 82 Stat. 1107, 1117 (1968), 18 USCA § 3060, resolved the debate.[7] As was stated by District of Columbia Circuit Judge Spottswood W. Robinson III, in Coleman v. Burnett, 477 F. 2d 1187, 1199 (D. C. Cir. 1973):

"This Act provides mandatorily, with exceptions later to be considered, for 'a preliminary [hearing] . . . to determine whether there is probable cause to believe that an offense has been committed and that the arrested person has committed it.' The reason the Act indulges the preliminary hearing no independ-

---

sioner shall forthwith hold him to answer in the district court; otherwise the commissioner shall discharge him."

[6] See and compare Washington v. Clemmer, 339 F. 2d 715 (D. C. Cir. 1964); Blue v. United States, 342 F. 2d 894 (D. C. Cir. 1964); Crump v. Anderson, 352 F. 2d 649 (D. C. Cir. 1964); Dancy v. United States, 361 F. 2d 75 (D. C. Cir. 1966); Ross v. Sirica, 380 F. 2d 557 (D. C. Cir. 1967). These cases and the conflicting views of the members of the District of Columbia Circuit are discussed in a Note, *Preliminary Hearing in the District of Columbia—An Emerging Discovery Device*, 56 Geo. L. J. 191.

[7] A critical analysis of the act appears in Weinberg and Weinberg, *The Congressional Invitation to Avoid the Preliminary Hearing: An Analysis of Section 303 of the Federal Magistrates Act of 1968*, 67 Mich. L. Rev. 1361.

ent discovery role is evident from its legislative history. During hearings before the Senate Committee on the Judiciary, witnesses urged 'that preliminary examination afforded a necessary and useful medium for defense counsel to obtain discovery of the prosecution's evidence.' The Committee, however, was 'of the opinion that the problem of discovery should be treated separately from that of the preliminary hearing.' Although the need for expanded pretrial discovery procedures was recognized, the Committee felt that

> The preliminary hearing does not present an ideal opportunity for discovery. It is designed for another purpose; namely, that of determining whether there is probable cause to justify further proceedings against an arrested person. Thus, the degree of discovery obtained in a preliminary hearing will vary depending upon how much evidence the presiding judicial officer thinks is necessary to establish probable cause in a particular case. This may be quite a bit, or it may be very little, but in either event it need not be all the evidence within the possession of the Government that should be subject to discovery.

*The Committee accordingly concluded 'that discovery procedure should remain separate and distinct from the preliminary examination' * * *."* (Italics supplied.)

Accord, United States v. King, 482 F. 2d 768, 774 (D. C. Cir. 1973).

In adopting Rule 11.03 in its present form, the Minnesota Supreme Court shared this conviction that the probable cause hearing should not be used as a substitute for disclosure and discovery and that the legitimate concern of the defendant to know the case against him before trial should be dealt with by other means.[8]

---

[8] Similar conclusions appear in the cases and the literature. See, e. g., Sciortino v. Zampano, 385 F. 2d 132, 134 (2 Cir. 1965); United States v. Amabile, 395 F. 2d 47, 53 (7 Cir. 1967); Anderson, *The Preliminary Hearing—Better Alternatives or More of the Same?*, 35 Mo. L. Rev. 281, 289;

4. As initially proposed by the Supreme Court's Advisory Committee on Rules of Criminal Procedure, Rule 11 would have permitted a finding of probable cause to be based only upon "substantial evidence * * * admissible at trial," with six rather narrow exceptions.[9] As originally proposed, our rule differed substantially from Rule 5.1 of the Federal Rules of Criminal Procedure, which permits the probable cause finding to be "based upon hearsay evidence in whole or in part."[10] The point which

---

Oaks and Lehman, *A Criminal Justice System and the Indigent,* pp. 51 to 53.

[9] *As initially proposed,* Rule 11, relating to the omnibus hearing, provided in part as follows:

"If the defendant does not plead guilty at his initial appearance before the district court following a complaint, a hearing shall be held as follows:

* * * * *

*11.2 Probable Cause.*

  *11.21 Determination.*

    "If the defendant or the prosecution has demanded a hearing on the issue of probable cause, the court shall determine on the basis of the evidence presented whether there is probable cause to believe that defendant committed the offense charged * * *.

* * * * *

  *11.24 Admissible Evidence.*

    "A finding of probable cause shall be based on substantial evidence that would be admissible at the trial, with the following exceptions: * * *"

(The exceptions which were noted by the *proposed* rule are essentially identical to those which now appear in Rule 18.06, subd. 1.)

[10] Rule 5.1, Federal Rules of Criminal Procedure, reads in pertinent part as follows:

"(a) Probable cause finding. If from the evidence it appears that there is probable cause to believe that an offense has been committed and that the defendant committed it, the federal magistrate shall forthwith hold him to answer in district court. The finding of probable cause may be based upon hearsay evidence in whole or in part. The defendant may cross-examine witnesses against him and may introduce evidence in his own behalf."

bears emphasis is that the rule proposed by the Advisory Committee was not adopted by the Minnesota Supreme Court.

The proposed rule called for a determination of probable cause "on the basis of evidence presented" at the hearing [11] and required that "a finding of probable cause * * * be based on substantial evidence * * * admissible at trial," with the exceptions noted.[12] The rule actually adopted by this court reads as follows:

"The court shall hear and determine all motions made by the defendant or prosecution, including a motion that there is an insufficient showing of probable cause to believe that the defendant committed the offense charged in the complaint, and receive such evidence as may be offered in support or opposition. Each party may cross-examine any witnesses produced by the other. A finding by the court of probable cause shall be based upon the entire record including reliable hearsay in whole or in part. Evidence considered on the issue of probable cause shall be subject to the requirements of Rule 18.06, subd. 1." Rule 11.03, Rules of Criminal Procedure.

The crucial difference between the rule as adopted and the rule as proposed is of course found in this sentence of Rule 11.03:

"* * * A finding by the court of probable cause shall be based upon the entire record including reliable hearsay in whole or in part."

It is evident that the probable cause hearing as originally proposed by the advisory committee was structured in a much more formal way than the probable cause hearing for which provision is made in Rule 11.03 of the rules as adopted. Our decision not to accept Rule 11 as originally proposed was justified, we feel, by these considerations:

(a) The broad discovery permitted under the rules as adopted should make it possible in most cases to achieve the discovery functions of a formal preliminary hearing without ex-

---

[11] Proposed Rule 11.21.

[12] Proposed Rule 11.24.

hausting appearances of witnesses prior to trial and extensive pretrial adversary proceedings before a judge.[13]

(b) In most instances, the information available to the judge presiding at an omnibus hearing will form an adequate basis for determining probable cause, thus making unnecessary the production and cross-examination of witnesses in court. This is so because the "entire record including reliable hearsay in whole or in part" should include, at the time of the hearing upon the Rule 11.03 motion, all the information developed during the course of discovery.[14] The rules contemplate that information generated by the disclosure and discovery procedures should forthwith be filed in the manner provided in civil actions.[15]

(c) The use of the probable cause hearing as a substitute for the discovery permitted by the rules should be discouraged.[16]

(d) In those instances where defendant's counsel is convinced that the record developed by the time of the omnibus hearing fails to demonstrate the existence of probable cause, he is free to move for dismissal pursuant to Rule 11.03. If he challenges the adequacy of the "entire record including reliable hear-

---

[13] See Wright, 1 Federal Practice and Procedure, § 80, p. 139: "If [increased discovery in criminal cases] is to come to pass, it would seem better that it come by carefully considered amendment of the rules, rather than by a novel construction of the existing rule. Nor is it clear that the preliminary hearing is the most suitable vehicle for providing additional discovery." See, also, Advisory Committee Comment, Rule 9, Minnesota Rules of Criminal Procedure, 299 Minn. 59: "* * * The rules are intended to give the defendant and prosecution as complete discovery as is possible under constitutional limitations."

[14] Advisory Committee Comment, Rule 9, Rules of Criminal Procedure, 299 Minn. 59, states: "It is the object of the rules that these discovery procedures shall be completed so far as possible by the time of the Omnibus Hearing under Rule 11, * * *." See, also, Rule 19.04, subd. 7: "Before the date set for the Omnibus Hearing the prosecution and defendant shall complete the discovery that is required by Rules 9.01, subd. 1 and 9.02, subd. 1 * * *."

[15] Rule 9.03, subd. 9; Rule 33.04.

[16] See footnote 13, *supra.*

say" to support a finding of probable cause and does no more, the presiding judge will make the critical determination based on all the information contained in the files and records as of that time, including "reliable hearsay in whole or in part." Rule 11.03. The defendant can of course insist that all disclosures and discovery be filed with the court prior to its determination of the probable cause motion. Rule 9.03, subd. 9. In the rare case where the defendant supports his Rule 11.03 motion by the production of witnesses subject to cross-examination who give testimony which, if believed, would establish the defendant's innocence, the trial judge will not be free to merely base his decision on "the entire record including reliable hearsay in whole or in part." Instead, with respect to any element of the offense put in issue by defense testimony, the decision will have to be based upon "substantial evidence that would be admissible at trial" and such limited kinds of hearsay evidence as are described in Rule 18.06, subd. 1. Rule 11.03.

We believe that application of the rule in this way will prevent misuse of the probable cause hearing as a forum for discovery and at the same time protect a defendant unjustly or improperly charged from being compelled to stand trial.[17] Moreover, the procedure here outlined for probable cause hearings is comparable in principle to that prescribed by this court for extradition proceedings. See, State ex rel. Hastings v. Bailey, 263 Minn. 261, 116 N. W. 2d 548 (1962).

5.   The interpretation we give to Rule 11.03 meets the require-

---

[17] "The manifest function of the preliminary [hearing], and the only one presently viewed as legitimate, is to eliminate cases that for a variety of reasons ought not to be prosecuted." Graham and Letwin, *The Preliminary Hearing in Los Angeles: Some Field Findings and Legal Policy Observations,* 18 U. C. L. A. Rev. 635, 639. "The 'screening' function described by Justice Rosenberry [in Theis v. State, 178 Wis. 98, 189 N. W. 539 (1922)] is universally recognized as the primary function of the preliminary hearing. Indeed, most courts recognize it as the only valid objective of the preliminary hearing * * *." Kamisar, LaFave & Israel, Modern Criminal Procedure (4 ed.), p. 957.

ments of Gerstein v. Pugh, 420 U. S. 103, 95 S. Ct. 854, 43 L. ed. 2d 54 (1975). There, the United States Supreme Court held that, while the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite for detention, it does not require an adversary hearing with witness confrontation and the rights of cross-examination. We note, however, this language from the Gerstein decision (420 U. S. 119, 95 S. Ct. 866, 43 L. ed. 2d 68):

"Both the District Court and the Court of Appeals held that the determination of probable cause must be accompanied by the full panoply of adversary safeguards—counsel, confrontation, cross-examination, and compulsory process for witnesses. A full preliminary hearing of this sort is modeled after the procedure used in many States to determine whether the evidence justifies going to trial under an information or presenting the case to a grand jury. See Coleman v. Alabama, 399 U. S. 1 (1970); Y. Kamisar, W. LaFave & J. Israel, Modern Criminal Procedure 957-967, 996-1000 (4th ed. 1974). The standard of proof required of the prosecution is usually referred to as 'probable cause,' but in some jurisdictions it may approach a prima facie case of guilt. ALI, Model Code of Pre-arraignment Procedure, Commentary on Art. 330, pp. 90-91 (Tent. Draft No. 5, 1972). When the hearing takes this form, adversary procedures are customarily employed. The importance of the issue to both the State and the accused justifies the presentation of witnesses and full exploration of their testimony on cross-examination. This kind of hearing also requires appointment of counsel for indigent defendants. Coleman v. Alabama, *supra*. And, as the hearing assumes increased importance and the procedures become more complex, the likelihood that it can be held promptly after arrest diminishes. See ALI, Model Code of Pre-arraignment Procedure, *supra*, at 33-34.

"These adversary safeguards are not essential for the probable cause determination required by the Fourth Amendment. The

sole issue is whether there is probable cause for detaining the arrested person pending further proceedings. This issue can be determined reliably without an adversary hearing. The standard is the same as that for arrest. That standard—probable cause to believe the suspect has committed a crime—traditionally has been decided by a magistrate in a nonadversary proceeding on hearsay and written testimony, and the Court has approved these informal modes of proof.

\* \* \* \* \*

"The use of an informal procedure is justified not only by the lesser consequences of a probable cause determination but also by the nature of the determination itself. It does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt. See F. Miller, Prosecution: The Decision to Charge a Suspect with a Crime 64-109 (1969). This is not to say that confrontation and cross-examination might not enhance the reliability of probable cause determinations in some cases. In most cases, however, their value would be too slight to justify holding, as a matter of constitutional principle, that these formalities and safeguards designed for trial must also be employed in making the Fourth Amendment determination of probable cause."

We emphasize that there is a distinction between a hearing to test the right to detain and a hearing to determine whether a defendant should stand trial.[18] It may be a difference of degree only, but it is nevertheless significant. In the one case, the court is concerned with the right of the state of detain only; in the other, the court is concerned with the right of the state of detain

---

[18] As Anderson notes, "good cause for physical restraint cannot be equated" with a finding of probable cause which results in the accused's being detained for trial on the merits. Anderson, *The Preliminary Hearing—Better Alternatives or More of the Same?*, 35 Mo. L. Rev. 281, 287 (1970).

and, in addition, the justification for trial on the merits. Clearly, it will not be acceptable for the trial judge considering a Rule 11.03 motion to find probable cause on the basis of a prior judicial decision that the complaint was adequate to justify a warrant for arrest. Even assuming the correctness of the decision that probable cause existed to warrant arrest, that decision does not of itself determine the proper resolution of a Rule 11.03 probable cause motion. Rather, in all Rule 11.03 cases, the trial judge must exercise an independent and concerned judgment addressed to this important question: Given the facts disclosed by the record, is it fair and reasonable, applying Rule 11.03 as here interpreted, to require the defendant to stand trial? [19]

In situations where the defendant does not produce live witnesses who, if believed, would exonerate him, the facts would be found in the record presented, and may include hearsay. Rule 11.03. A carefully drawn and sufficiently detailed complaint made by an investigating officer and incorporating reliable hearsay could in some limited situations be adequate support for a finding of probable cause, at least where the essential truth of the facts averred in the complaint is not contested. In the more usual situation, the complaint will and should be buttressed by the police report, including verified statements of witnesses whose observations form the basis for the complaint [20] and, in addition, the results of disclosure and discovery procedures required by the rules.

Finally, under Rule 11.03 as here interpreted, adversary procedures will be employed in every case where the defendant, in support of his motion to dismiss, produces witnesses who, if believed,

---

[19] Adherence to the A. B. A. Standards for Criminal Justice, The Prosecution Function and The Defense Function (Approved Draft, 1971), will limit routine use of the Rule 11.03 motion. See, The Prosecution Function, §§ 3.1, 3.4, 3.6, 3.7, 3.9, 3.10, 3.11. See, also, The Defense Function, §§ 1.2(c); 3.1(b); 4.1; 4.5; 5.2(b).

[20] The practice of attaching the police report and copies of statements taken from witnesses to the complaint incorporated in "the record," as now being done in Ramsey County, is recommended.

would exonerate him. In such cases, with respect to any element of the offense so contested, the decision of the judge to whom the motion is submitted must be based on substantial evidence [21] admissible at trial [22] and adequate to bring the charge against the defendant within reasonable probability.

That these procedures may be something more than Gerstein v. Pugh, *supra,* makes mandatory should not concern us. We are and should be concerned if innocent persons can be forced to undergo expensive and demeaning trials only to be found not guilty, or if trial on the merits can be delayed or aborted by excessive formalism. Proper use of Rule 11.03 must balance these considerations, and, in striking the balance, care should be exercised to avoid overemphasis on judicial efficiency or convenience. [23]

### III

While it is not possible to illustrate every situation which might arise under Rule 11.03 as here interpreted, some examples of the rule in operation might be helpful. Each example assumes a Rule 11.03 motion to dismiss for lack of probable cause.

*Example 1.* The record before the trial judge consists of the

---

[21] "Substantial evidence" means evidence adequate to support denial of a motion for a directed verdict of acquittal.

[22] The evidence must be admissible at trial except for evidence which comes within the limited exceptions detailed in Rule 18.06, subd. 1.

[23] Graham and Letwin, *supra,* footnote 17, note that "one of the most serious defects in the administration of the preliminary hearing was the attitude of all participants that since the purpose of the hearing was simply to determine if there was enough evidence to try the defendant, i. e., it was a very low-level interim decision, the job could be handled in a perfunctory fashion and with a minimum investment of time and talent." 18 U. C. L. A. L. Rev. 953. The authors deplore this attitude and hope that their article demonstrates "how faulty" such an attitude is. They recall the observation of Professor Kenneth Culp Davis: Often the interim decisions are more important than the final ones. Davis, Discretionary Justice 22 (1969), referred to by Graham and Letwin at 18 U. C. L. A. L. Rev. 953.

verified complaint and the police report, including statements of witnesses. The prosecutor elects to stand on the record and presents no witnesses or additional evidence. The defendant offers no evidence but challenges the adequacy of the showing to support probable cause. If the trial judge is satisfied that the facts appearing in the record, including reliable hearsay, would preclude the granting of a motion for a directed verdict of acquittal if proved at trial, he will deny the motion.

*Example 2.* The same as Example 1, except that the defendant offers evidence directed at the credibility of facts appearing in the record. The prosecutor elects to stand on the record. The trial judge will deny the motion, unless he is satisfied that evidence introduced by the defendant makes inherently incredible facts which appear in the record and which are necessary to establish an essential element of the offense charged.[24]

*Example 3.* The same as Example 1, except that the defendant produces a witness subject to cross-examination whose testimony, if believed, would exonerate him. (Such witnesses would include: [a] A defendant who denies the offense, [b] a witness who places defendant at a place other than the scene of the crime, [c] a witness who identifies a person other than the defendant as the perpetrator of the offense, [d] a witness to the offense who describes it in terms which, if true, demonstrate the absence of one or more essential elements of the crime charged.) The prosecutor elects to present no rebuttal testimony. The motion will be granted unless there is substantial evidence admissible at trial in the record which would justify denial of a motion for a directed verdict of acquittal.

*Example 4.* The same as Example 3, except that the prosecu-

---

[24] "Inherently incredible" and "inherently improbable" are terms used to describe evidence or testimony which is seemingly impossible under the circumstances. "Inherently incredible" testimony is evidence which amounts to no evidence at all. People v. Pettis, 95 Cal. App. 2d 790, 791, 213 P. 2d 731, 733 (1950); People v. Tereno, 24 Cal. Rptr. 501, 504, 207 Cal. App. 2d 246.

tor supplements the record with substantial evidence admissible at trial and not inherently incredible which would be adequate to withstand a motion for a directed verdict of acquittal. Because the trial judge's function at the omnibus hearing does not extend to an assessment of the relative credibility of conflicting testimony, the motion to dismiss for lack of probable cause will be denied in an Example 4 situation.[25]

In all the examples it is assumed that the motion to dismiss for lack of probable cause will be heard in conjunction with the omnibus hearing. At least in Examples 3 and 4, the motion to dismiss for lack of probable cause would be premature if made before the results of disclosure and discovery are filed or before the admissibility of challenged evidence has been determined. Because the flow of the action contemplated by the rules anticipates that probable cause will ordinarily be the last Rule 11 motion decided, it would seem generally unwise to decide a Rule 11.03 motion in advance of the omnibus hearing.

Although we believe that the Rules of Criminal Procedure contemplate that final determination of Rule 11 motions to dismiss for lack of probable cause should be deferred until after disclosure and discovery is complete and admissibility of challenged evidence is determined, we accept the fact that in some districts other patterns of dealing with this problem have developed. Pending assessment and review of the rules pursuant to our order of February 25, 1975, we will accede to the judgment of the trial courts in this regard where the defendant merely challenges the adequacy of the "entire record including reliable hearsay" to establish probable cause. However, in cases where the

---

[25] Federal Rules of Criminal Procedure 5.1 closely parallels Minnesota's Rule 11.03 with respect to the use of hearsay to determine probable cause. The general rule in Federal practice is that the magistrate should refrain from passing upon the credibility of witnesses unless the testimony is inherently incredible. United States v. Hinkle, 307 F. Supp. 117, 125 (D. C. D. C. 1969); 8 Moore, Federal Practice, § 5.1.02[3] at 5.1-13 (2 ed.); Note, 83 Yale L. J. 771, 779 (1974).

defendant triggers the Rule 18.06, subd. 1 requirement that probable cause be based on "substantial evidence admissible at trial," final disposition of the motion must of necessity be deferred until the admissibility of contested evidence is determined, as required by Rules 11.02 and 11.07. In these cases, we anticipate that there will be adherence to the rules as explained in this opinion.

IV

As provided in the order of this court issued on February 25, 1975, a review and assessment of all of the rules will be made after July 1, 1976. Further consideration of what the function of a probable cause hearing should be—as distinguished from what it is under the rule as now formulated—will be deferred until we have had the benefit of one year's experience working with the rule in its present form. The advisory committee has been charged with the responsibility of submitting its comments and recommendations at that time, and the views of the bench and bar will be solicited and considered as well.[26] In the meantime, it is anticipated and expected that all persons interested in the improvement in the administration of criminal justice will make a conscientious effort to make the rules as formulated and interpreted work as effectively as possible, so that the review and assessment of their provisions at the time appointed by our order will assure a discriminating selection of those rules or parts of rules which can be improved on the basis of our experience.

For the reasons stated above, the application for extraordinary relief in this case was denied.

---

[26] It is anticipated that our first year's experience with the rules will be evaluated in light of comparable Federal experience and the provisions of the American Law Institute's Model Code for Prearraignment Procedure, the A. B. A. Standards Relating to the Administration of Criminal Justice, and the Uniform Rules of Criminal Procedure (1974). See, generally, A. L. I., Model Code, art. 330; A. B. A. Standards for Criminal Justice, Discovery and Procedure Before Trial, especially §§ 1.4, 5.1-5.3; and Uniform Rules of Criminal Procedure, art. 3, especially Rule 344(b).