**In the Matter of the WELFARE OF J.G.B., Child.**

**No. C8–90–2340.**

Court of Appeals of Minnesota.

July 23, 1991.

Wesley R. Martins, Duluth, for appellant child.

Hubert H. Humphrey, III, Atty. Gen., Lori M. Mittag, Paul Kempainen, Asst. Attys. Gen., St. Paul, John C. Hoffman, Mille Lacs ·County Atty., Milaca, for respondent State.

Considered and decided by HUSPENI, P.J., and PARKER and PETERSON, JJ.

## OPINION

HUSPENI, Judge.

Juvenile appellant challenges his delinquency adjudication on the grounds that the evidence was insufficient to prove him guilty of the underlying offense, criminal vehicular homicide. We affirm.

## FACTS

On August 19, 1989, appellant J.G.B., age 16, was driving with an instruction permit. At 3:50 a.m., while appellant and his 14–year–old girlfriend were driving southbound on highway 169 in Mille Lacs county, appellant crossed the center line, entered the northbound lane, and collided head-on with a motor home driven by John Mattys. Although Mattys veered to the right shoulder to avoid appellant, appellant's car struck the motor home and caused it to roll into the ditch on the northbound side of the highway. Mattys was thrown from the motor home, which collapsed on top of him. Mattys died from compression asphyxiation at the scene.

Prior to the accident, Jeremy Gubins and his passenger, Walter Staniec, were driving a pick-up truck approximately 50 m.p.h. three to five car lengths behind Mattys. Gubins testified that the visibility that night was clear, that he saw Mattys veer slightly to the right, saw a pair of headlights approaching him in the northbound lane and veered sharply to the left, into the southbound lane, to avoid a head-on collision. The southbound car collided with the motor home and, as it spun around, it collided with Gubins' truck near the center line. Appellant's car stopped on the right shoulder of the northbound lane, behind the wreckage of the Mattys motor home. Gubins moved his truck to the right shoulder of the northbound lane and went to call police. He did not meet appellant.

The first ambulance attendant on the scene, Kent Sorvick, assessed Mattys' condition and found that he had died from his injuries. When Sorvick went to investigate appellant's vehicle, he found appellant lying on the front seat of the car with glass cuts on his face and body. As the emer-gency crew removed appellant from the car, Sorvick noticed the smell of alcohol on appellant's breath. When they transported appellant to the hospital, he was nonresponsive until he felt pain; then he would react violently. Blood tests revealed a blood alcohol content of .06 and .022 micrograms of LSD in his bloodstream. Minnesota State Trooper Robert Crace attempted to speak with appellant at the hospital but found him nonresponsive and smelling of alcohol. Dr. Jacobson, on emergency room duty that night, testified that appellant's nonresponsiveness may have been due to a cerebral concussion combined with his intoxication.

The autopsy revealed that Mattys died from asphyxiated chest compression due to the weight of the motor home on his body. Tests also revealed that Mattys had a blood alcohol content of .04.

Minnesota State Trooper Tom Nelson conducted an investigation and reconstructed the scene of the accident. The investigation produced evidence of skid marks crossing over the center line from the southbound to the northbound lane, skid marks in the northbound lane, and points of impact only in the northbound lane. This evidence corroborated Gubins' account of the incident and placed appellant's southbound car over the center line in the northbound lane where it collided with Mattys' motor home.

After a two-day hearing, the trial court issued an order adjudicating appellant a delinquent child based on its determination that appellant had violated Minn.Stat. § 609.21, subd. 1(2) (Supp.1989).

## ISSUE

Did the trial court err when it found sufficient evidence to prove that appellant was guilty of criminal vehicular homicide?

## ANALYSIS

In reviewing a claim of insufficient evidence, this court must ascertain whether "given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the

offense charged." *State v. Merrill,* 274 N.W.2d 99, 111 (Minn.1978). The reviewing court cannot retry the facts, but must view the evidence in a light most favorable to the state "and must assume that the jury believed the state's witnesses and disbelieved any contradictory evidence." *Id.* These standards apply to the review of a jury trial as well as a court trial. *State v. Ibarra,* 355 N.W.2d 125, 130 (Minn.1984).

Appellant charges that the state failed to prove that he committed criminal vehicular homicide because it did not establish that he was both negligent and intoxicated when he struck the Mattys motor home. We cannot agree.

Under Minn.Stat. § 609.21, subd. 1(2) (Supp.1989),

> Whoever causes the death of a human being not constituting murder or manslaughter as a result of operating a vehicle * * * in a negligent manner while under the influence of alcohol, a controlled substance, or any combination of those elements * * * is guilty of criminal vehicular operation resulting in death.

In order to convict a driver under this statute, the state bears the burden of proving both negligence and intoxication. *State v. VanWert,* 442 N.W.2d 795, 797 (Minn.1989).

■ Negligence means "the doing of something which an ordinarily prudent person would not do or the failure to do something which an ordinarily prudent person would do under like or similar circumstances." *State v. Munnell,* 344 N.W.2d 883, 886 (Minn.App.1984) (quoting *Erickson v. Van Web Equip. Co.,* 270 Minn. 42, 49, 132 N.W.2d 814, 819 (1965)). We find the evidence presented at trial more than sufficient to establish that appellant was negligent on the night in question. First, we note that he was not yet a licensed driver. His driver's permit allowed him to drive only when accompanied by an adult licensed driver. Minn.Stat. § 171.05, subd. 2 (1988). On the night of this incident, however, appellant violated that statute; only his 14–year–old girlfriend accompanied him in the car. Violation of a statute is negligence per se. *Seim v. Garavalia,* 306 N.W.2d 806, 810 (Minn.1981).

■ In addition, appellant had crossed the center line of the two-lane highway and was driving completely in the lane of oncoming traffic when he struck Mattys' vehicle. Such evidence alone is sufficient to establish a driver's negligence. *State v. Eli,* 402 N.W.2d 627, 630 (Minn.App.1987). Appellant claims that the skid marks which cross the center line disprove the trial court's finding that appellant crossed into oncoming traffic "without taking any evasive action to avoid a collision." We agree with appellant that the record does not support that portion of the trial court's conclusion which refers to "taking [no] evasive action to avoid a collision." However, we also note that the record provides no explanation for the skid marks, and is therefore inadequate for this court to conclude that appellant *did* take "evasive action." Even though we disregard the trial court's challenged conclusion, the record amply supports the determination that appellant was fully in the oncoming lane upon impact and that appellant forced Mattys and the pickup truck to take evasive action. This evidence supports the trial court's ultimate finding of negligence on the part of appellant.

■ In addition to negligence, the state must also establish that appellant was driving under the influence of alcohol. Appellant argues that the state failed to prove intoxication and thus did not prove beyond a reasonable doubt that appellant violated Minn.Stat. § 609.21, subd. 1(2). Again, we cannot agree.

■ Appellant interprets *VanWert* to require proof of 0.10 blood alcohol content in order to establish the intoxication element of the crime. Appellant implicitly distinguishes the supreme court's use of "intoxication" and "under the influence." That distinction is faulty, however, because *VanWert* used those terms interchangeably:

> The clear intent of the statute [section 609.21] was to make it possible to obtain convictions in a case in which gross negligence could not be proved but where the

state could prove that the death or injury resulted from negligent driving by *one who was under the influence* at the time. In other words, the state can get a conviction either by showing the single element of gross negligence or by showing two elements: negligence plus *intoxication.*

*Id.,* 442 N.W.2d at 797 (emphasis added). Further, we note that convictions under Minn.Stat. § 609.21, subd. 1(2) require the driver to have been "under the influence." Therefore, even if appellant's distinctions were correct, any failure by the state to prove "intoxication" is academic here. Finally, proof of 0.10 blood alcohol content would have been crucial if respondent would have charged appellant with violation of section 609.21, subd. 1(*3*) which focuses on drivers "with an alcohol concentration of 0.10 or more." However, respondent charged appellant with violation of section 609.21, subd. 1(*2*) which focuses on drivers who are "under the influence of alcohol." These statutory options, which define the elements to be proven at trial, reflect the applicability of the *VanWert* two-pronged test to cases involving drivers with varying degrees of alcohol consumption.

Tests taken shortly after the accident determined that appellant had a blood alcohol content of .06. This evidence was relevant to whether or not appellant had been driving while under the influence of alcohol. *See* Minn.R.Evid. 401.[1] In addition, appellant's girlfriend, the ambulance attendant, Dr. Jacobson and Trooper Crace all testified at trial that appellant smelled like alcohol and was visibly intoxicated after the accident.

Dr. Jacobson also testified that appellant's condition was characteristic of someone who may have suffered a cerebral concussion. When presented with appellant's blood alcohol level of .06, Dr. Jacobson observed that the concentration was not extremely high, but did not retract his testimony that appellant exhibited signs of intoxication. Appellant argues that the doctor's testimony proves that appellant's conduct, which witnesses attributed to his "intoxication," was actually caused by his head injuries. This argument fails, however, because Dr. Jacobson never abandoned his position that appellant was intoxicated. Ultimately, the right to judge the doctor's credibility, evaluate his testimony and weigh all of the evidence rests with the trial court. *State v. White,* 357 N.W.2d 388, 390 (Minn.App.1984). The cumulative evidence supports the court's finding that appellant was both negligent and intoxicated when this accident occurred.

▮ Next, appellant argues that the accident victim, Mattys, was contributorily negligent. We find no merit to this argument. Contributory negligence of the victim is not a defense in a criminal case. *State v. Crace,* 289 N.W.2d 54, 59 (Minn. 1979). Even if we did consider contributory negligence, the evidence in this case does not suggest that Mattys was negligent. Both men in the truck which followed Mattys before the accident testified that Mattys never left his northbound lane of traffic. Gubins established that Mattys had not exceeded the speed limit when he testified that he was following Mattys at a speed of 45–50 m.p.h. Appellant's girlfriend testified that she saw Mattys' headlights before the crash. In addition, Gubins, Staniec and Trooper Nelson testified that Mattys took evasive action to avoid the collision by veering toward the right shoulder of the highway.

▮ Finally, we find no merit in appellant's argument that the weight of the motor home, rather than appellant's negligent driving, was the proximate cause of Mattys' death.

Where the situation created by the original actor is the inducing cause of the intervening act, such intervening act will not break the causal connection between the original act and the resulting injury,

---

1. We note further that in DWI prosecutions "evidence that there was at the time an alcohol concentration of more than 0.05 and less than 0.10 is relevant evidence in indicating whether or not the person was under the influence of alcohol." Minn.Stat. § 169.121, subd. 2(b) (1990).

nor will it absolve the original wrongdoer from liability if in the exercise of reasonable foresight he could have anticipated that the situation might lead to an act likely to result in harm.

*State v. Schaub,* 231 Minn. 512, 519, 44 N.W.2d 61, 65 (1950). Evidence presented at trial established that Mattys veered to the right in an attempt to avoid a head-on collision with appellant. But for that impact, which caused Mattys' vehicle to roll over into the ditch, Mattys never would have been crushed beneath the weight of his motor home.

## DECISION

The record contains sufficient evidence to support the trial court's conclusion that appellant was guilty beyond a reasonable doubt of criminal vehicular homicide. The trial court, therefore, properly adjudicated appellant a delinquent child on this ground.

Affirmed.