STATE of Minnesota, Appellant,

v.

Scott Fredrick HEGSTROM, Respondent.

No. C5–95–2041.

Court of Appeals of Minnesota.

Feb. 20, 1996.

Review Denied April 16, 1996.

Hubert H. Humphrey, III, Attorney General, St. Paul, Boyd A. Beccue, Kandiyohi County Attorney, Deborah R. Peterson, Assistant County Attorney, Willmar, for appellant.

Robert J. Zohlmann, New London, for respondent.

Considered and decided by HUSPENI, P.J., SCHUMACHER and FOLEY,* JJ.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

SCHUMACHER, Judge.

This appeal is from a pretrial order dismissing for lack of probable cause a complaint charging respondent Scott Fredrick Hegstrom with criminal vehicular homicide. *See* Minn.Stat. § 609.21, subd. 1(1) (grossly negligent driving), (2) (negligent driving while under the influence of a controlled substance) (1994). We reverse.

## FACTS

The state charged respondent Hegstrom with several counts of criminal vehicular homicide for a January 27, 1995, accident in which three people were killed. As police reconstructed the accident, Hegstrom's pickup truck rear-ended a passenger car on Highway 23 near New London, killing Iva Burr and Zelpha and Milo Brossard. The state charged Hegstrom with three counts, one per victim, of causing death by his negligent driving while under the influence of a controlled substance, alcohol, or a combination of both. *See* Minn.Stat. § 609.21, subd. 1(2). The state later filed an amended complaint adding three additional counts, one per victim, of causing death by grossly negligent driving. *See id.,* subd. 1(1). Hegstrom moved to dismiss the complaint for lack of probable cause.

State trooper Dennis Koenen testified at the omnibus hearing that when he arrived at the scene, the weather and road conditions, as well as the visibility, were all fine. Koenen testified that Hegstrom "appeared very spacey, and aloof, and out of it," and talked in a low, slow voice, and said he did not know whether he had hit something or something had hit him.

Lieutenant Anhorn of the state patrol testified that after the preliminary accident reconstruction was done he asked Hegstrom how he could have missed seeing the Brossard vehicle in front of him, Hegstrom replied that he might have looked away. Anhorn testified that Hegstrom seemed "distracted" and "drowsy." He testified that he looked at Hegstrom's eyes, and the pupils were so small they "were almost non-existent." Anhorn testified that Heg-

strom's pupils were so constricted that he would have rated them as 1.0, "pinpoint size", the lowest ranking available on the scale used for that purpose.

Hegstrom agreed to give blood and urine samples for chemical testing. Hegstrom's blood sample did not show any alcohol. The blood sample did contain .16 milligrams/liter of methamphetamine. The urine sample showed both amphetamine and methamphetamine, as well as the narcotic substances propoxyphene and norpropoxyphene. There were also traces of cocaine and THC, a metabolite of marijuana.

The defense presented the testimony of Tom Burr, a forensic toxicologist. He testified that the substances found in Hegstrom's urine (including the propoxyphene) were irrelevant because they were on the way out of his system. He testified that Hegstrom's blood test was negative for everything but methamphetamine. He also testified that methamphetamine did not become toxic until it reached the level of 5 mg./liter. He testified that at .16 mg./liter, the level of methamphetamine in Hegstrom's blood was only about 3% of the toxic level, and would not affect a person. Burr testified that in his opinion there was no evidence that Hegstrom was under the influence of a controlled substance.

The state presented the testimony of Sergeant Thooft, the head of the BCA's drug recognition program. Thooft testified, based on a review of the police reports and the testimony of the officers at the scene, that Hegstrom looked and acted like a person under the influence of a narcotic.

Thooft testified that only a narcotic analgesic would severely constrict the pupils as Hegstrom's were. He testified that propoxyphene was a narcotic analgesic that was found in Hegstrom's urine. He testified that methamphetamine would make the pupils dilate rather than constrict, but that when a combination of drugs are involved, the effects of one drug could still appear. Thooft testified that although the propoxyphene was not found in the blood test, the BCA tested only for the substances it could screen.

The accident reconstruction indicated that Hegstrom had rear-ended the Brossard vehicle. The investigating officers estimated that the Brossard vehicle was traveling 43 mph when it left the roadway. Anhorn testified that Hegstrom's pickup truck left no marks from which its speed could be determined. But he testified that there was a "substantial" difference in speed between the two vehicles (termed "closing speed"), a difference he estimated as being at least 30 mph.

Koenen testified that Hegstrom told him that before the accident he had looked away from the road at an industrial plant nearby. There was testimony that a truck driver on the scene reported seeing the Brossard vehicle pass and pull in front of Hegstrom's truck. But police discounted this report because of errors in detail.

The trial court granted Hegstrom's motion to dismiss for lack of probable cause, dismissing both the charges involving gross negligence and those involving negligent driving while under the influence. The court noted that the prosecution had

> provided no hard medical evidence which establishes a causal connection between the level of methamphetamine in [Hegstrom's] blood and his peculiar conduct.

## ISSUES

1. Did the trial court clearly err in concluding probable cause was lacking to show Hegstrom was under the influence of a controlled substance?

2. Did the court clearly err in finding a lack of probable cause to show Hegstrom was grossly negligent?

## ANALYSIS

1. The state argues that the trial court clearly erred in concluding there was no probable cause to show Hegstrom was under the influence of a controlled substance. *See generally State v. Joon Kyu Kim*, 398 N.W.2d 544, 550–51 (Minn.1987) (in pretrial appeal, state must show clearly and unequivocally that trial court erred and that error will have critical impact on outcome of prosecution).

■ The criminal vehicular homicide statute provides:

> Whoever causes the death of a human being not constituting murder or manslaughter as a result of operating a motor vehicle,
>
> (1) in a grossly negligent manner;
>
> (2) in a negligent manner while under the influence of alcohol, a controlled substance, or any combination of those elements;
>
> * * * *
>
> is guilty of criminal vehicular homicide resulting in death * * *.

Minn.Stat. § 609.21, subd. 1(1), (2) (1994). The state can prove the offense either by showing the single element of gross negligence, or by showing ordinary negligence plus intoxication. *State v. VanWert*, 442 N.W.2d 795, 797 (Minn.1989).

■ If the defense presents "exonerating evidence" in support of its motion to dismiss for lack of probable cause, the state must show it has substantial evidence admissible at trial that would justify the denial of a motion for a directed verdict of acquittal. *State v. Rud*, 359 N.W.2d 573, 579 (Minn. 1984). As to the count charging negligent driving while under the influence, Hegstrom did present "exonerating evidence" in the form of Thomas Burr's expert toxicological testimony. We conclude, however, that the state has shown substantial evidence that Hegstrom was under the influence of a controlled substance.

■ At the omnibus hearing, the state's case need only satisfy the probable cause standard. There is no requirement that it be supported by expert testimony, even though the defense has presented expert testimony exonerating Hegstrom. The trial court, in requiring "hard evidence" of intoxication, has in effect required the state to produce direct evidence of intoxication, depriving it of the inferences to be drawn from the circumstantial evidence. We conclude that this was clear error.

This court has affirmed a juvenile adjudication for criminal vehicular homicide although the juvenile's blood alcohol level was tested at only .06. *In re Welfare of J.G.B.,*

473 N.W.2d 342, 346 (Minn.App.1991). The court noted that there was expert testimony that the juvenile showed signs of intoxication, and that the DWI statute makes evidence of alcohol concentration between .05 and .10 relevant in determining whether the defendant was under the influence. *Id.* at 346, n. 1 (citing Minn.Stat. § 169.121, subd. 2(b)).

There is no defined level of chemical concentration at which a person is presumed to be under the influence of a controlled substance. *See* Minn.Stat. § 169.121, subd. 1(b) (1994). The defense expert testified that the level of methamphetamine found in Hegstrom's blood was far below that required for him to be under the influence. But, the state presented lay opinion testimony in the form of police officers' observations of indicia of intoxication, as well as circumstantial evidence of intoxication in the form of the accident reconstruction and Hegstrom's admissions that he was inattentive before the accident and could not remember how it happened. The trial court's function at the omnibus hearing did not extend to assessing the relative credibility or weight of this conflicting evidence. *State v. Florence,* 306 Minn. 442, 460, 239 N.W.2d 892, 903–04 (1976) (noting examples of when motions to dismiss for lack of probable cause will be denied). As the supreme court has stated with respect to evidence of alcohol intoxication, such issues are "with rare exception" left to the jury. *State, City of Eagan v. Elmourabit,* 373 N.W.2d 290, 294 (Minn. 1985).

We do not discount the impact of the defense toxicologist's testimony. Courts in other states have wrestled with the issue of what evidence of the influence of controlled substances is sufficient to support a conviction. *See generally* Annot., "Automobiles: Driving Under the Influence, or When Addicted to the Use, of Drugs as Criminal Offense," 17 A.L.R.3d 815 (1968). One court has held that a conviction for operating a motor vehicle while under the influence of drugs could not be supported without expert testimony linking observed symptoms to a specified level of consumption. *State v. Rifkin,* 140 Vt. 472, 438 A.2d 1122, 1123 (1981). But that debate concerns the sufficiency of

the evidence to convict, not to establish probable cause.

Under the facts of this case, the observed symptoms of some type of intoxication, particularly the severely constricted pupils, plus the strong evidence of inattentive driving, are sufficient to establish probable cause to believe Hegstrom was driving under the influence of a controlled substance. Expert testimony was not required. We note, however, that the defense expert admitted that a toxicology test alone will not determine whether a person is under the influence. There was evidence that a narcotic such as propoxyphene could cause the pupils to constrict. Furthermore, there was testimony that the drugs found in Hegstrom's urine could interact, and it is unclear that the BCA test actually eliminated the possibility that propoxyphene was present in Hegstrom's blood at the time of the accident.

2. The trial court also dismissed the counts charging Hegstrom with criminal vehicular homicide based on grossly negligent driving. This court has held that a pretrial dismissal of criminal vehicular homicide charges is proper only if "there are no issues of fact and defendant's conduct could not rise to the level of gross negligence as a matter of law." *State v. Plummer,* 511 N.W.2d 36, 38 (Minn.App.1994) (review of dismissal of grand jury indictment for criminal vehicular homicide). "Gross negligence" is more than ordinary negligence, and has been defined as " 'very great negligence or absence of even slight care.' " *Id.* at 39 (quoting *State v. Miller,* 471 N.W.2d 380, 383 (Minn.App. 1991)).

The accident reconstruction evidence indicates that Hegstrom rear-ended the Brossard vehicle, while travelling at least 30 mph faster than the Brossard vehicle, and without applying the brakes before the collision. This occurred on a stretch of roadway with only a gradual curve, where the visibility and road conditions were good. Moreover, Hegstrom's admissions at the scene that he never saw the Brossard car support the state's theory that Hegstrom was totally oblivious to the road ahead of him. This

evidence is sufficient to present a jury issue on the element of grossly negligent driving.

The trial court clearly erred in concluding otherwise. First, the trial court gave credence to an eyewitness account that the Brossard vehicle pulled in front of Hegstrom's pickup truck and braked. It was not the function of the trial court at the omnibus hearing to weigh the credibility of this account (nor did the eyewitness testify at the omnibus hearing).

Second, the trial court required the state to present "hard evidence" that Hegstrom "was distracted for a long period of time." The state, however, cannot be expected to reconstruct Hegstrom's actions before the accident in such detail as to provide "hard evidence" of how long he took his eyes off the road. There may be no way of proving such a fact other than through Hegstrom's own statements (and Hegstrom told one officer that he had taken his eyes off the road for a couple of minutes).

Gross negligence does not require willful and wanton disregard, or reckless conduct. *State v. Bolsinger*, 221 Minn. 154, 159, 21 N.W.2d 480, 485 (1946). The trial court appears to have concluded that, as a matter of law, failure to maintain a proper lookout on a clear day is not gross negligence unless the inattention continues for a lengthy period of time. We disagree. A sufficient degree of inattention to the road could constitute a lack of "slight care," that is gross negligence. *See State v. Tinklenberg*, 292 Minn. 271, 273, 194 N.W.2d 590, 591 (1972) (driver inattentiveness one factor in verdict for gross negligence). On the facts of this case, that is a question for the jury.

### DECISION

The trial court clearly erred in dismissing both the counts charging Hegstrom with grossly negligent driving causing death and those charging him with negligent driving while under the influence of a controlled substance and resulting in death.

**Reversed.**