**STATE of Minnesota, Respondent,**

v.

**Cassie Marie ARNOLD, Appellant.**

**No. A10–201.**

Court of Appeals of Minnesota.

Feb. 15, 2011.

---

Lori Swanson, Attorney General, St. Paul, MN; and Anthony C. Palumbo, Anoka County Attorney, Robert D. Goodell, Assistant County Attorney, Anoka, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Lydia M. Villalva Lijó,

Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by ROSS, Presiding Judge; HUDSON, Judge; and SCHELLHAS, Judge.

## OPINION

ROSS, Judge.

Cassie Arnold appeals from her first-degree drug possession conviction, arguing that the state failed to prove possession and that her trial was unfair because the prosecutor defined "dominion" as "control" in his closing argument when discussing the legal standard for constructive possession. Because uncontroverted evidence exists that Arnold spent the day treating methamphetamine with acetone and hid several baggies of methamphetamine below a table when police arrived, the evidence is sufficient to prove possession, and because "dominion" *does* mean "control," we affirm.

## FACTS

"The sheriff's here! The sheriff's here!"

That scream from a man shouting into a window of an Oak Grove house one evening in October 2007 informed the members of the Anoka–Hennepin Drug Task Force that they had lost the element of surprise. They were arriving to execute a search warrant that they had obtained because they suspected that the resident, Edward Burton, was selling methamphetamine from the house. One of Burton's roommates, Arthur Sahr, was the man proclaiming the task force's arrival. Appellant Cassie Arnold, Burton's live-in girlfriend, was also home, along with a fourth person.

Detective Joseph Sadler entered the house and immediately saw Burton approach him from the kitchen, holding darts. Detective Sadler tackled, handcuffed, and searched Burton. He found over $5,000 cash in Burton's pockets. Other officers detained Cassie Arnold, Sahr, and the other man, handcuffing and seating them on a couch. They searched Arnold and found no drugs or cash.

The officers saw several small bags under the dining room table. The bags contained methamphetamine and marijuana. Police arrested all four occupants and separated Burton from the group. Detective Sadler took Burton into the garage and questioned him. Burton denied that the methamphetamine was his, but he suggested that it might be Arnold's.

Police put Burton and Arnold together in one police car and the other two arrestees in another while they finished searching the house. The couple sat together in the police car for about 35 minutes. Burton would later claim that during this time, he urged, "If you love me, you are going have to take the rap for this because they are going to put me away for a long time because I got priors."

At the police station, Arnold heard and waived her *Miranda* rights, agreeing to discuss the case with Detective Sadler. She told him that she had been using methamphetamine since seventh grade, that she had lived at the house with Burton for three years, and that she had been selling methamphetamine for one or two years. She never said the methamphetamine was hers, but she said that she had been trying to clean it with acetone to try to improve its appearance. She said that immediately before police entered, she heard someone yelling about their arrival. She then went to the kitchen, grabbed the baggies of methamphetamine and the pipe that were on the table, and hid them under the dining room table where police found them. She said that her fingerprints would be on the baggies.

Burton was charged with and pleaded guilty to illegal possession and sales of the methamphetamine and marijuana. Two years later, Arnold was tried for possessing the methamphetamine.

Burton, who now has a child with Arnold, testified on Arnold's behalf. He said that before the police entered, Arnold had been baking cookies. He acknowledged that all of them had been consuming drugs and said that he smoked drugs six or seven times already that day. He testified that he was the one generally responsible for obtaining the couple's methamphetamine for use, and he claimed that the methamphetamine that police found had been his. But he also testified that he had *not* been the one who moved the methamphetamine to under the table when the police arrived.

The jury was not convinced by Burton's claim of sole possession of the drugs. It heard the prosecutor explain that the word "dominion" in the jury instruction about constructive possession actually means "control," and it found Arnold guilty of first-degree possession of over twenty-five grams of methamphetamine in violation of Minnesota Statute section 152.021, subdivision 2(1).

## ISSUES

I. Did the state prove beyond a reasonable doubt that Arnold possessed more than twenty-five grams of methamphetamine?

II. Was Arnold's trial unfair because the prosecutor told the jury that the word "dominion" meant "control" and the district court did not provide any other definition for the word dominion?

## ANALYSIS

### I

■ Arnold argues that the state offered insufficient evidence to prove that she possessed twenty-five grams of methamphetamine. We analyze insufficient-evidence claims by determining whether a jury could reasonably find that the defendant was guilty based on the facts in the record and the legitimate inferences they present. *Bernhardt v. State*, 684 N.W.2d 465, 476 (Minn.2004). We assume that the jury believed the state's evidence and rejected contrary evidence. *State v. Brocks*, 587 N.W.2d 37, 42 (Minn.1998). In circumstantial-evidence cases, the evidence "must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *State v. Taylor*, 650 N.W.2d 190, 206 (Minn.2002). For that reason, we give no deference to the jury's choice between competing but reasonable inferences. *State v. Andersen*, 784 N.W.2d 320, 329–30 (Minn.2010).

■ The primary disputed factual issue at trial was whether Arnold possessed the baggies of methamphetamine that police found under the dining room table. There was no question that Arnold knew that the baggies contained methamphetamine. To prove possession, the state needed to establish that Arnold "consciously possessed, either physically or constructively," the substance that Arnold knew was methamphetamine. *State v. Florine*, 303 Minn. 103, 104, 226 N.W.2d 609, 610 (1975).

Without dispute, Arnold physically handled the drugs, treating them with acetone and hiding them under the dining room table when the police arrived to search the house. It seems clear to us that this evidence of physically handling the drugs proves physical possession, so this court is in the awkward position of determining whether proof of physical possession is

sufficient to prove constructive possession. This is because the jury was instructed to convict if they found that Arnold constructively possessed the drugs with little reference in the instructions to *actual* possession, a seemingly more direct route to conviction in this case. The trial attorneys likewise focused their arguments on the requirements of constructive possession. So while "[t]he purpose of the constructive-possession doctrine is to include within the possession statute those cases *where the state cannot prove actual or physical possession,*" *Id.* at 104, 226 N.W.2d at 610 (emphasis added), we will address the issue as presented on appeal, which is whether the jury's constructive-possession verdict finds sufficient support in the record.[1]

■ Where drugs are found in a place to which others have access, constructive possession is proved when "there is a strong probability (inferable from other evidence) that defendant was at the time consciously exercising dominion and control over [them]." *Id.* at 105, 226 N.W.2d at 611. The state therefore needed to introduce evidence that Arnold exercised "dominion and control" over the drugs.

Plenty of evidence indicates that Arnold exercised dominion and control over the methamphetamine. The drugs were in a common area of the house Arnold shared with her drug-dealing boyfriend. She admitted that she used methamphetamine since seventh grade. She admitted that she hid the drugs under the table when she heard that the police had arrived. She admitted that her fingerprints would be on the baggies. She admitted she had been applying acetone to the methamphetamine to whiten its appearance. And Burton

initially told police that the drugs were Arnold's.

Arnold is asking this court to reject her incriminating statements and Burton's incriminating statements and to accept an alternative version of events based only on her boyfriend's attempt to exculpate her at trial. But the jury was in the best position to weigh witness credibility, and on review, this court must assume that the jury disbelieved any testimony contrary to its verdict. *State v. Landa,* 642 N.W.2d 720, 725 (Minn.2002). To the extent that Burton's testimony conflicts with the state's evidence, we rely on the version pointing to guilt. And even if we were to set Burton's first version of the events aside, ample evidence not only supports the conclusion that Arnold exercised dominion and control over the drugs, but also excludes any reasonable inferences that she did not exercise control over the drugs; even Burton's revised story offered in testimony does not contradict Arnold's undisputed admission that she hid the drugs when the police arrived and helped in the manufacturing process.

## II

■ Arnold also argues that her trial was unfair because the prosecutor defined "dominion" as "control." The source of the claim is the following portion of the prosecutor's closing argument:

Now, control. If this had been found in her hand, on her person, we wouldn't be talking about this next definition, and that is a legal definition. Specifically, on page 6, you will have the jury instructions, look at it. If found in a place to which others had access, so Mr. Burton or the other gentleman at the house,

---

1. We do not suggest that the parties or the district court should have necessarily treated this case differently. *Florine* itself *might* be read to suggest the need to focus on constructive possession even if evidence of recent *actual* possession exists. See *id.*

defendant knowingly exercised dominion and control over it.

Now I see dominion and I think to myself, I think, I know what that word means, but what the heck, I am going to look it up. So I went on the internet and I looked it up and it says to control or the exercise of control. Definition 2, a territory or sphere of influence or control. Leave it up to lawyers to say dominion, which means control and control. So what it boils down to is did the defendant exercise control over item 1, 2, 3, 4, 5, and 7? Of course she did. She took them off the table and put them on the floor. How else can you exercise control?

Arnold did not object to the state's closing argument or suggest any other definition of "dominion and control" in her own closing argument.

■ We review unobjected-to alleged prosecutorial misconduct under the modified plain error standard set forth in *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). Under this review, the appellant has the burden to demonstrate first, that an error occurred, and second, that the error was plain. *Id.* The plain error test includes other features that are irrelevant here because, for the following reasons, we conclude that no error occurred.

To prove an error occurred as alleged here, Arnold must establish that the definition of "dominion and control" is not simply "control," as the prosecutor suggested in his closing argument. Arnold, contending that "dominion" "is more than mere control" but is instead also "sovereign or supreme authority," cannot prevail.

If this were a case of statutory interpretation rather than one of caselaw interpretation, Arnold's argument would have at least some initial momentum. In that situation, we would begin with a definition of the common meaning of "dominion." And the *Oxford English Dictionary* informs us that the English word arises from roots in Roman Law with influence of both Old French and Latin, combining to refer to the sovereign lordship over property arising from its ownership. *See Oxford English Dictionary* 949 (2d ed.1989). This property-rights origin of the term survived for centuries; as late as 1979, the "[g]enerally accepted definition of 'dominion' [was] perfect control in right of ownership. The word implie[d] both title and possession and appear[ed] to require a complete retention of control over disposition." *Black's Law Dictionary* 436 (5th ed.1979). But, consistent with the prosecutor's theory here, the current *Black's Law Dictionary* has shortened the description for broader use beyond real property, defining the term simply as "control; possession." *Id.* at 560 (9th ed.2009).

This cursory etymology has only background significance here, however, because we rely on other factors to interpret judicial holdings, particularly the limits of their factual context, stated reasoning, and other precedent. *Foster v. Naftalin*, 246 Minn. 181, 208, 74 N.W.2d 249, 266 (1956). In context and reasoning, it does not appear that the *Florine* court meant anything critical by including both words, "dominion and control." It was considering the evidence in a drug-possession conviction after an officer searching a car belonging to one person found drugs together with documents that belonged to a different person who had been borrowing the car. The court considered whether the evidence was sufficient to convict the borrower, focusing specifically on "whether there was sufficient evidence that defendant, although not in actual possession of the substance at the time of arrest, nonetheless constructively possessed it." *Florine*, 303 Minn. at 104, 226 N.W.2d at 610. With-

out any further elaboration, the court considered the purpose of the constructive-possession doctrine to allow prosecution of those against whom a strong inference indicates prior possession and continued "exercise [of] dominion and control ... up to the time of the arrest." *Id.* at 105, 226 N.W.2d at 610.

Although the *Florine* court established the "dominion and control" standard allowing for prosecution of defendants who constructively but not actually possess drugs, it did not define "dominion." Instead the supreme court cited to a 1972 law review article discussing the purpose of the constructive-possession doctrine. *Id.* at 105, 226 N.W.2d at 610–11 (citing Charles H. Whitebread & Ronald Stevens, *Constructive Possession in Narcotics Cases: To Have and Have Not*, 58 Va. L.Rev. 751, 755 (1972)). Looking to the article itself also does not provide guidance in defining the term. It is helpful on this point only because it plainly informs us that it is not helpful: Its authors say that any attempt to distinguish between actual and constructive possession "must begin with the notion that defining possession in the traditional terms of dominion or control is simply not informative in any functional manner." Whitebread & Stevens, *supra,* at 759. They add that "[a]lthough every jurisdiction that uses constructive possession defines it in terms of 'dominion or control,' the exact meaning of those words varies from state to state." *Id.* at 759 n. 26. And they reason that "within any given jurisdiction there may be cases which, although using the same terminology, apply functionally different standards." *Id.*

Neither the *Florine* court's facts nor its reasoning or scholarly support provides any basis for us to find a meaningful distinction between "dominion" and "control." But more difficult for Arnold's argument, the context of *Florine* prohibits

us from accepting her contention that the *Florine* court intended that only a "sovereign or supreme authority" can be found guilty of constructive possession by exercising "dominion" over the drugs. We could reach Arnold's suggested interpretation of *Florine* only if we accept that the supreme court acted beyond its constitutional authority in fashioning the "dominion and control" standard. Unless a legal basis exists to judicially limit a law enacted by the legislature (such as to restrict an unconstitutionally overbroad statute, for example), courts lack the constitutional authority to redefine a statute. *See Martinco v. Hastings,* 265 Minn. 490, 497, 122 N.W.2d 631, 638 (1963). And nothing in the language of *Florine* even hints that it intended to redefine or to limit the statute's reach on any basis.

The *Florine* court addressed the fact that the law penalizes "possession," and it incorporated the concept of "constructive possession" to avoid the absurdity of a drug possessor escaping the statute's reach simply by tactically distancing herself from physical possession. *See* Minn. Stat. § 152.021, subd. 2. A person who knowingly possesses a controlled substance has offended the statute without regard to whether she has any legal right of ownership, sovereignty, or supreme authority over the contraband. *Id.* But under Arnold's theory, a new element is introduced; and under that element, drug couriers and others who possess but who do not actually own drugs could avoid conviction simply by avoiding *physical* possession. So the very absurdity that *Florine* prevents is the one that would follow from Arnold's interpretation.

Finding no support for Arnold's view in *Florine* itself, we ask whether some definition of "dominion" has arisen in the cases that have applied the *Florine* "dominion and control" standard to indicate that "do-

minion" means more than "control." The answer is no.

Neither party here mentioned *State v. Robinson,* 517 N.W.2d 336 (Minn.1994), but we are convinced that its reasoning guides the outcome. In *Robinson,* a defendant convicted of possessing a controlled substance questioned the propriety of an instruction that had directed the jury to convict if the defendant "possessed a controlled substance [that] was in a place under his control to which other people did not normally have access," rather than his preferred instruction, which would have indicated that it must be proven that the drugs were found in a place "under his *exclusive* control." 517 N.W.2d at 340. The supreme court rejected the argument, pointing out that it seemed "inconsistent to speak of control as 'exclusive' when others have access." *Id.* The court went further to note that the defendant also could have been convicted if he was found to have "exercis[ed] dominion and control," emphasizing that "dominion may be shared with others." *Id.* (citing *State v. LaBarre,* 292 Minn. 228, 237, 195 N.W.2d 435, 441 (1972)). By rejecting the idea that the state must prove that the defendant exclusively controlled the place where drugs were found in order to sustain a conviction based on constructive possession, the *Robinson* court implicitly undermined the foundation of Arnold's argument. And that it did so by expressly reasoning that "dominion may be shared with others" leaves little breadth for Arnold's contention that "dominion ... is sovereign or *supreme* authority." By definition, "supreme" authority is not shared. And once you strip the notion of sole, sovereign, supreme authority from the historic definition of "dominion," all that remains is "control."

One case that comes close to ascribing a distinction between "dominion" and "con-trol" is *State v. Porter,* 674 N.W.2d 424 (Minn.App.2004). In *Porter,* we concluded that the district court erred by instructing the jury that the standard for constructive possession of a firearm was "dominion *or* control" while the standard for constructive possession of drugs was "dominion *and* control," relying on the fact that the stated standard is the same for both. 674 N.W.2d 424, 429 (Minn.App.2004). Although we emphasized the distinction, we expressly declined to decide "[w]hether or not there [is] a substantive difference between 'dominion' and 'control.'" *Id.; cf. State v. Denison,* 607 N.W.2d 796, 800 (Minn.App.2000) ("A person may constructively possess a controlled substance alone or with others."), *review denied* (Minn. Jun. 13, 2000). In unpublished cases we have alluded to the idea that "dominion" means control, but we have come short of declaring so definitively.

We hold that "dominion" simply means "control" in the context of the "dominion and control" standard for constructive possession of drugs under section 152.021, subdivision 2. At least in this context, "dominion and control" is a legal redundancy, much like "null and void," "force and effect," "free and clear," "full and complete," and so on. Although lawyers (and courts) historically used redundant phrases, *see* Richard C. Wydick, *Plain English for Lawyers* 19–22 (4th ed.1998), they are usually unnecessary. The phrase "dominion and control" has been part of the American judiciary in other contexts since at least 1806, *see D. & G. Ludlow v. Bowne & Eddy,* 1 Johns. 1, 10 (N.Y.1806), and in Minnesota since 1879, *see D.B. Coleman v. B.A. O'Neil & L.E. Pearce,* 26 Minn. 123, 132, 1 N.W. 846, 852 (1879). Courts originally used the phrase to describe tortious conversion of property, then criminal larceny, then, ultimately, constructive possession as applied to our drug-possession statute. But even in those other contexts, no

apparent reason exists to distinguish between the terms. And we choose not to ascribe a distinction in a redundancy that has "persisted long after any practical purpose was dead." Wydick, *supra*, at 20.

## DECISION

Arnold admitted to hiding the drugs under the table when police arrived and to cleaning the drugs chemically. So she exercised control over the drugs and therefore had at least constructive, if not actual, possession of the drugs. The district court did not err by failing to correct *sua sponte* the prosecutor's statement to the jury equating "dominion" with "control" because dominion means no more than control as applied to constructive possession of drugs.

**Affirmed.**