**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-1100**

State of Minnesota,
Appellant,

vs.

Demarcus Lemaine Barker,
Respondent

**Filed December 12, 2016
Reversed and remanded
Worke, Judge**

Rice County District Court
File No. 66-CR-16-575

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John L. Fossum, Rice County Attorney, Terence J. Swihart, Assistant County Attorney, Faribault, Minnesota (for appellant)

Drake D. Metzger, Metzger & Nyberg, LLC, Minneapolis, Minnesota (for respondent)

        Considered and decided by Stauber, Presiding Judge; Worke, Judge; and Bratvold, Judge.

### S Y L L A B U S

        Probable cause that a defendant was in actual possession of a controlled substance can be established by circumstantial evidence.

**O P I N I O N**

**WORKE**, Judge

In this pretrial appeal, the state challenges the district court's order dismissing several controlled-substance charges for lack of probable cause. Because the dismissal has a critical impact on the state's case and the circumstantial evidence provides sufficient probable cause to believe that respondent physically possessed the controlled substances, we reverse and remand.

**FACTS**

In March 2016, an agent with the Cannon River Drug and Violent Offender Task Force (CRDVOTF) received information from a confidential source (CS) that respondent Demarcus Barker was planning a trip to Chicago to purchase cocaine and marijuana. The CS told the agent that Barker asked the CS to go with him to Chicago. The CS agreed. The CS drove a rented 2007 Nissan Altima, and Barker drove a rented black Dodge Charger. The CS allowed CRDVOTF to place a tracking device on the Nissan.

The CS and Barker were in Chicago for four days. The CS remained in contact with CRDVOTF during the trip and told agents that Barker had obtained Ecstasy pills, that the pills looked like they were purple and yellow, and that the pills were packaged in bundles of 20 or more. The CS reported that Barker had also obtained cocaine and marijuana.

On March 14, Barker, along with his cousin, and the CS left Chicago and headed back to Minnesota. Barker and his cousin drove back in the Charger, and the CS drove separately in the Nissan. The CS told CRDVOTF agents that during a stop on the trip

2

home, the CS had seen Ecstasy pills and marijuana in a white plastic bag in the Charger's trunk. CRDVOTF agents were also aware that there was an active felony warrant for Barker's arrest on an unrelated matter, and the agents arranged to have him arrested when he entered Rice County.

At approximately 10:20 p.m., officers observed Barker's vehicle traveling 87 mph in a 70-mph-zone along I-35 in Rice County, Minnesota. The officers attempted to conduct a traffic stop of Barker's vehicle. The Charger initially slowed down, but then accelerated and fled at a high rate of speed. Officers deactivated their emergency lights and followed the Charger. At one point, an officer observed the Charger stopped in the middle of the roadway. When the officer, who was in an unmarked squad car, activated emergency lights, the Charger again fled, eventually crashing into a ditch.

Barker and his cousin fled the vehicle on foot. Several officers pursued and found Barker and his cousin lying on their stomachs in a field. The two were placed under arrest, and a key fob for the Charger was found on Barker's person. Officers searched the field for evidence, but found none.

An agent who remained at the crash site noticed that the vehicle's passenger-side window was rolled all the way down. He looked inside of the vehicle and smelled a strong odor of marijuana. He noticed what appeared to be marijuana buds on the Charger's floor and dashboard. The agent and another officer searched the vehicle and collected 258.49 grams of marijuana.

The next morning, several law enforcement officers searched at the crash site and on the route the Charger had traveled and found what they believed to be controlled

substances. Three baggies containing purple and green pills that the officers believed to be Ecstasy were found within 20 feet of each other. Officers also found two baggies containing a rock-like substance that appeared to be crack cocaine and a larger baggie that appeared to contain powder cocaine. All of these items were found on the east side of the road in a ditch south of the crash site. The pills were approximately 1,000 to 1,200 feet from the crash site, and the suspected cocaine was several hundred feet further away from the crash site. The location of the items indicated that they may have been thrown from the passenger side of the Charger before the crash.

The officers weighed and field-tested the substances. There were a total of 30 green and purple pills in the three baggies. One tablet tested positive for the chemical compound referred to as Ecstasy. The powder substance in the larger baggie weighed 28.80 grams and tested positive for cocaine. The rock-like substance weighed 6.83 grams and also tested positive for cocaine.

Barker was charged with five controlled-substance offenses and fleeing a peace officer in a motor vehicle. Barker moved to dismiss the controlled-substance counts for lack of probable cause. The matter was submitted to the district court based on the police reports and without any testimony.

While Barker's motion was under advisement, the state filed an amended complaint, after the Minnesota Bureau of Criminal Apprehension (BCA) tested and weighed the alleged controlled substances. The amendments state that the BCA found that the powder substance was cocaine and weighed over 27 grams. The rock-like substance weighed in excess of 5.8 grams and was identified as containing cocaine. The

three baggies of green and purple pills were determined to contain methamphetamine, not Ecstasy, and together weighed 7.8 grams. The amended complaint alleged nine counts: (I) importing controlled substances across state borders (cocaine); (II) first-degree sale of a controlled substance (cocaine); (III) first-degree possession of a controlled substance (cocaine); (IV) second-degree possession of a controlled substance (crack cocaine); (V) second-degree sale of a controlled substance (crack cocaine); (VI) fifth-degree sale of a controlled substance (marijuana); (VII) fleeing a peace officer in a motor vehicle; (VIII) second-degree possession of a controlled substance (methamphetamine); and (IX) second-degree sale of a controlled substance (methamphetamine).

The district court granted Barker's motion and dismissed all charges except counts VI and VII. The district court's order was based on its determination that no probable cause existed to believe that Barker possessed the baggies of cocaine and methamphetamine found in the ditch. The state appeals the dismissal.

## ISSUE

Did the district court err by determining that there was insufficient probable cause that Barker possessed the narcotics found in the ditch south of the crash site?

## ANALYSIS

As a threshold matter, we must decide whether the district court's order is appealable. When the state appeals a pretrial order, we will only reverse if the state clearly and unequivocally shows "(1) that the ruling was erroneous and (2) that the order will have a 'critical impact' on its ability to prosecute the case." *State v. McLeod*, 705 N.W.2d 776, 784 (Minn. 2005). The state may appeal a dismissal for lack of probable

5

cause only if the dismissal is "based on questions of law." Minn. R. Crim. P. 28.04, subd. 1(1). The question of "whether the dismissal is based on a legal or a factual determination is a threshold jurisdictional question." *State v. Ciurleo*, 471 N.W.2d 119, 121 (Minn. App. 1991).

Because the drugs found in the ditch were not in Barker's physical possession at the time of apprehension, the district court concluded as a matter of law that the state could not establish actual possession. *See State v. Florine*, 303 Minn. 103, 104-05, 226 N.W.2d 609, 610-11 (1975) (outlining the differences between actual and constructive possession).

The state argues that "actual possession" is a legal term and can be proved by circumstantial evidence. Barker concedes that the dismissal was based on a legal determination and satisfies the critical impact requirement. We agree that because the district court's probable-cause dismissal turns on its interpretation of the legal term "actual possession," this appeal is authorized by rule 28.04, subdivision 1(1). *See State v. Salyers*, 858 N.W.2d 156, 158-59 (Minn. 2015) ("The issue of whether the court of appeals properly applied Minnesota's constructive-possession doctrine to possession of firearms inside a locked safe is a question of law that we review de novo."). The state has also established that the district court's order has a critical impact on its ability to prosecute the case because dismissal based on a matter of law meets the critical impact requirement even if only one count of a multi-count complaint is dismissed. *See State v. Trei*, 624 N.W.2d 595, 597 (Minn. App. 2001), *review dismissed* (Minn. June 22, 2001).

We review de novo the district court's dismissal for lack of probable cause based on a legal determination. *State v. Gerard*, 832 N.W.2d 314, 317 (Minn. App. 2013). "[T]he test of probable cause is whether the evidence worthy of consideration . . . brings the charge against the prisoner within reasonable probability." *State v. Florence*, 306 Minn. 442, 446, 239 N.W.2d 892, 896 (1976) (quotation omitted). "Unlike proof beyond a reasonable doubt or preponderance of the evidence, probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *State v. Harris*, 589 N.W.2d 782, 790-91 (Minn. 1999) (quotation omitted).

Probable cause exists if "the facts appearing in the record, including reliable hearsay, would preclude the granting of a motion for a directed verdict of acquittal if proved at trial." *Florence*, 306 Minn. at 459, 239 N.W.2d at 903. The district court must view the evidence in the light most favorable to the state, *State v. Knoch*, 781 N.W.2d 170, 178 (Minn. App. 2010), *review denied* (Minn. June 29, 2010), and may not "assess[] the relative credibility or weight of . . . conflicting evidence." *State v. Hegstrom*, 543 N.W.2d 698, 702 (Minn. App. 1996), *review denied* (Minn. Apr. 16, 1996).

This case turns on whether there is probable cause to establish that Barker possessed the cocaine and methamphetamine found in the ditch. Possession may be either actual or constructive. *State v. Smith*, 619 N.W.2d 766, 770 (Minn. App. 2000), *review denied* (Minn. Jan. 16, 2001). Actual possession, also referred to as physical possession, involves "direct physical control." *Jacobson v. Aetna Cas. & Sur. Co.*, 233 Minn. 383, 388, 46 N.W.2d 868, 871 (1951); 10 *Minnesota Practice*, CRIMJIG 3.33 (2015). Constructive possession may be established either (1) by proof that the item was

in a place under the defendant's "exclusive control to which other people did not normally have access" or (2) by proof of a strong probability that the "defendant was at the time consciously exercising dominion and control over it," even if the item was in a place to which others had access. *Florine*, 303 Minn. at 105, 226 N.W.2d at 611.

Because the drugs were not on Barker's person at the time he was apprehended, the district court determined that there was no proof of actual possession. The district court also determined that there was no probable cause to establish constructive possession. The state does not challenge the district court's determination as to constructive possession. The state argues only that the informant's statements and other circumstantial evidence provide probable cause to establish that Barker actually possessed the drugs prior to his apprehension.

The mere fact that an item is not in a defendant's physical possession at the time of apprehension does not preclude prosecution for actual possession of contraband. In *State v. Olhausen*, the defendant agreed to sell an undercover officer one pound of methamphetamine. 681 N.W.2d 21, 23, 26 (Minn. 2004). The defendant handed the officer a bag containing what the experienced officer believed to be methamphetamine. *Id.* at 24. But the defendant took the substance back and fled the scene before police could apprehend him. *Id.* The suspected methamphetamine was never discovered, and the defendant told police that he threw it out of his car window while fleeing. *Id.* at 24-25. Although he was not in possession of the substance when he was apprehended, Olhausen was convicted of multiple controlled-substance offenses, including sale and possession. *Id.* at 22-23. Citing the undercover officer's testimony, Olhausen's own

admissions, and Olhausen's flight from the scene, the supreme court affirmed these convictions and noted that "[t]he circumstantial evidence surrounding [the defendant's] attempted sale and possession of a controlled substance is compelling." *Id.* at 28-29.

In *State v. Arnold*, there was no dispute that the defendant "physically handled the drugs" and hid them under a table. 794 N.W.2d 397, 400 (Minn. App. 2011). Nevertheless, presumably because Arnold was not in physical possession of the drugs when apprehended, the district court instructed the jury only on constructive possession. *Id.* at 399, 401. On review of Arnold's conviction, we emphasized that "[t]he purpose of the constructive-possession doctrine is to include within the possession statute those cases *where the state cannot prove actual or physical possession*." *Id.* at 401 (quotation omitted). Although it was "clear" to us that the "evidence of physically handling the drugs prove[d] physical possession," the jury had been instructed on constructive possession, and we reluctantly addressed the defendant's sufficiency challenge under that doctrine. *Id.* at 400-01.

Here, the district court erred as a matter of law by determining that probable cause to establish actual possession was lacking merely because Barker was not in physical possession of the cocaine and methamphetamine at the time of apprehension. While there is no direct evidence that Barker physically possessed the drugs found in the ditch, the CS's statements and other circumstantial evidence may provide probable cause to establish actual possession at an earlier time.[1]

---

[1] "Direct evidence is evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *Bernhardt v. State*, 684

9

As stated above, probable cause exists if the facts in the record would preclude granting a motion for a directed verdict of acquittal if the same facts are proved at trial. *Florence*, 306 Minn. at 459, 239 N.W.2d at 903. On a motion for a directed verdict of acquittal, the district court must apply the same standard that appellate courts use in reviewing a sufficiency-of-the-evidence challenge. *State v. Sam*, 859 N.W.2d 825, 831 (Minn. App. 2015). In reviewing cases based on circumstantial evidence, we apply a two-step analysis. *Id.* at 833. We first scrutinize the evidence to identify the circumstances established and examine the inferences that can be drawn from those circumstances. *Id.* We then determine whether those circumstances are consistent with guilt and inconsistent with any other reasonable hypothesis. *Id.* We have not previously applied this heightened circumstantial evidence test to a probable cause challenge, and we do not decide here that it must be applied in such cases. Nevertheless, we apply this test out of an abundance of caution.

When taken in the light most favorable to the state, the facts in the record include the following circumstances: (1) Barker traveled to Chicago to purchase cocaine and marijuana; (2) during the trip, Barker obtained Ecstasy pills that looked like they were purple and yellow and that were packaged in bundles of 20 or more; (3) Barker also bought cocaine during the trip; (4) on the drive back to Minnesota, there were Ecstasy pills and marijuana in Barker's trunk; (5) when police attempted to stop Barker on his return to Minnesota, he fled; (6) Barker eventually crashed his vehicle, fled on foot, and

N.W.2d 465, 477 n.11 (Minn. 2004) (quotation omitted). "Circumstantial evidence is defined as evidence based on inference and not on personal knowledge or observation and all evidence that is not given by eyewitness testimony." *Id.* (quotation omitted).

10

was apprehended in a field; (7) 258 grams of marijuana were recovered in Barker's vehicle; (8) the passenger-side window of the vehicle was rolled all the way down, and this was unusual for Minnesota in March; (9) the morning after Barker's apprehension, police discovered powder cocaine in a plastic bag, crack cocaine in two separate baggies, and three bundles containing a total of 30 purple and green pills that tested positive for methamphetamine; (10) the position of the drugs indicated that they may have been thrown out of Barker's passenger-side window as he fled from police.

The circumstances established are consistent with the hypothesis that the drugs found in the ditch were the drugs that Barker purchased in Chicago. The circumstances are also consistent with the theory that Barker actually possessed the drugs, before they were discarded out of his passenger-side window while Barker was fleeing police.

Barker was driving and his cousin was also in the car. Accordingly, it is possible that Barker's cousin alone disposed of the drugs. We find this hypothesis unreasonable for several reasons. First, Barker, not his cousin, purchased the drugs. Second, Barker drove the Charger away from police, presumably to allow himself time to dispose of the drugs. After police first attempted to stop the Charger and before the Charger passed the point where the drugs were found, an officer observed the vehicle stopped in the middle of the road. When the officer, who was in an unmarked squad car, activated emergency lights, the Charger fled. Barker likely stopped the vehicle to allow him to gather the drugs before discarding them. Finally, Barker crashed the vehicle into a ditch not far from where the drugs were found. This indicates that Barker was in the process of throwing the drugs out the window and took his eyes off the road. Possibilities of

11

innocence do not require a directed verdict of acquittal as long as "the evidence taken as a whole makes such theories seem unreasonable." *State v. Taylor*, 650 N.W.2d 190, 206 (Minn. 2002) (quotation omitted). The circumstances are consistent with the theory that Barker actually possessed the drugs during his flight from police and are inconsistent with any other rational hypothesis.

Barker maintains that the pills described by the CS were green and purple, but the pills found in the ditch were yellow and purple. While the drugs found in the ditch were not exactly what the CS had described, they were very similar, and the district court specifically noted that the "drugs were consistent with the descriptions of the drugs [the] CS reported [Barker] had obtained in Chicago." Barker also claims that the CS described the drugs as being located in the trunk of the Charger, which means they should have been found at the crash site. But the CS told police that the drugs were in the trunk at some point on the drive back from Chicago, Barker could have moved them from the trunk at a later point in the journey.

Finally, Barker maintains that the district court found the CS's statements to police to be unreliable hearsay. But the district court's order states, "[b]ecause the decision of probable cause is based on the entire record, including reliable hearsay, the court may properly consider the evidence submitted, including the statements of the confidential informant." Moreover, the CS's statements were substantially corroborated and are not the only evidence that Barker possessed the drugs eventually found in the ditch. The open passenger-side window, the places where the drugs were found, the type of drugs found, the location of the crash site, the marijuana found in Barker's vehicle, and

12

Barker's flight from police all corroborate information from the CS and establish probable cause to believe that Barker purchased the drugs in Chicago and actually possessed them as he fled from police.

## D E C I S I O N

The fact that the drugs were not found in Barker's possession at the time of apprehension does not preclude a finding of probable cause to establish actual possession. Circumstantial evidence provided probable cause to establish that Barker actually possessed the methamphetamine and cocaine during his flight from police. Accordingly, the district court erred by dismissing the charges.

**Reversed and remanded.**