*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0259**

State of Minnesota,
Respondent,

vs.

Erick Martinez-Mondragon,
Appellant.

**Filed January 2, 2024
Affirmed
Schmidt, Judge**

Rice County District Court
File No. 66-CR-21-2846

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Brian M. Mortenson, Rice County Attorney, Sean R. McCarthy, Assistant County Attorney, Faribault, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bratvold, Presiding Judge; Ross, Judge; and Schmidt, Judge.

**SCHMIDT**, Judge

Appellant Erick Martinez-Mondragon argues his conviction for unlawful possession of a firearm must be reversed because (1) there is insufficient evidence of his constructive possession of the firearm, and (2) respondent State of Minnesota did not present evidence, independent of Martinez-Mondragon's confession, reasonably tending to prove that he possessed the gun. Martinez-Mondragon also argues his gross-misdemeanor sentence for driving while impaired must be amended to 364 days instead of 365 days. Because the state presented sufficient evidence to prove that Martinez-Mondragon possessed the firearm, the state presented evidence independent of Martinez-Mondragon's confessions, and the district court imposed an appropriate sentence, we affirm.

## FACTS

In December 2021, officers stopped a vehicle driven by Martinez-Mondragon for speeding and because the front passenger door was open while the vehicle was in motion. M.G.B. sat in the front passenger seat and two children were in the backseat.

When asked to identify himself, Martinez-Mondragon initially provided officers with the name Leonardo, as well as documents misidentifying him as Leonardo Campo Rodriguez. Because the responding officer smelled marijuana coming from the vehicle, she requested Martinez-Mondragon and M.G.B. step out of the car.

After further direction to exit the vehicle, M.G.B. got out, back-first, and proceeded to walk with officers to the front of the squad car hunched over with her hands in the area between her legs. The officer told M.G.B. to drop whatever she was concealing between

her legs. M.G.B. removed a gun from under her dress. The firearm had a bullet in the chamber and was not in a holster or otherwise secured.

When police recovered the gun, Martinez-Mondragon tried to run from officers. An officer quickly secured Martinez-Mondragon, who later provided his real name.

An officer handcuffed M.G.B. and placed her in the squad car. In response to the officer's question of whether she had anything else on her, M.G.B. stated, "No I don't. I'm sorry. That's not even mine." M.G.B. later denied, again, that the firearm belonged to her.

At the police station, Martinez-Mondragon requested that officers charge him and not M.G.B. because "it wasn't really her fault." He also told officers he did not "mean to just, ya know, carry a gun, ya know . . . conceal and carry." He stated that if officers wanted to press charges, they should only charge him and that he took "full accountability for it."

The state charged Martinez-Mondragon with one count of possession of a firearm or ammunition by an ineligible person under Minnesota Statutes section 624.713, subd. 1(2) (2020), and one count of third-degree driving while impaired (DWI) under Minnesota Statutes section 169A.26, subd. 1(a) (2020).

Before trial, Martinez-Mondragon pleaded guilty to a gross misdemeanor DWI. The district court accepted the guilty plea at the start of trial.

The jury found Martinez-Mondragon guilty of possession of a firearm by an ineligible person. The district court imposed sentences of 333 days in jail on the gross-misdemeanor DWI conviction and 60 months in prison on the felony possession of a firearm by an ineligible person.

This appeal follows.

**DECISION**

**I.      The state presented sufficient evidence to prove beyond a reasonable doubt that Martinez-Mondragon possessed the firearm.**

Martinez-Mondragon argues that the state did not prove he possessed the gun that M.G.B. hid under her dress. He argues the circumstances proved are consistent with rational hypotheses other than guilt. We are not persuaded.

"When evaluating the sufficiency of the evidence, appellate courts carefully examine the record to determine whether the facts and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *State v. Griffin*, 887 N.W.2d 257, 263 (Minn. 2016) (quotation omitted). We must view the evidence in the light most favorable to the verdict, and we must assume that the fact-finder disbelieved any evidence conflicting with the verdict. *Id.* The verdict will not be overturned if the fact-finder could reasonably have found the defendant guilty of the charged offense. *Id.*

"Possession may be proved through evidence of actual or constructive possession." *State v. Harris*, 895 N.W.2d 592, 601 (Minn. 2017). Constructive possession applies when the state "cannot prove actual or physical possession . . . but where the inference is strong that the defendant at one time physically possessed the [contraband]" and "continued to exercise dominion and control over [the contraband]." *State v. Florine*, 226 N.W.2d 609, 610 (Minn. 1975). Constructive possession may be established by the state proving either (1) the "police found the item in a place under the defendant's exclusive control to which other people normally did not have access," or (2) if others had access, "there is a strong

4

probability (inferable from other evidence) that at the time the defendant was consciously or knowingly exercising dominion and control over [the item]." *Harris*, 895 N.W.2d at 601. Exercising such dominion and control requires more than "mere proximity" to the contraband. *Id.* An individual may possess an item jointly with another person. *Id.*

There is no evidence that Martinez-Mondragon actually possessed the gun. The state argues the circumstantial evidence proved Martinez-Mondragon actually possessed the gun at an earlier time, but the evidence does not support that argument because no one offered testimony to establish he physically possessed the firearm.[1] Accordingly, our analysis focuses on whether the evidence sufficiently established constructive possession.

*Circumstantial or direct evidence*

The level of scrutiny that we apply to a sufficiency-of-the-evidence review turns on whether the elements of an offense are supported by direct or circumstantial evidence. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). Because the elements of the offense here are only supported by circumstantial evidence, we must closely scrutinize the sufficiency of that evidence. *State v. Al-Naseer*, 788 N.W.2d 469, 473-75 (Minn. 2010).

---

[1] These circumstances are distinguishable from cases cited by the state to argue for actual possession. For example, in *State v. Barker* this court held that circumstantial evidence provided probable cause that the defendant had actually possessed controlled substances despite the defendant not physically possessing the contraband at the time of apprehension. 888 N.W.2d 348, 355 (Minn. App. 2016). However, *Barker* involved substantial evidence of the defendant's prior possession. *See id.* (evidence in the record indicated that defendant had purchased controlled substances, the drugs were stored in the trunk of defendant's vehicle, some substances were recovered from the vehicle, and the evidence indicated the drugs may have been thrown out of the passenger-side window when defendant fled from police). Here, there is no evidence establishing Martinez-Mondragon's actual possession of the firearm prior to his contact with officers.

Our circumstantial evidence review requires a two-step analysis. *Silvernail*, 831 N.W.2d at 598. First, we identify the circumstances proved. *Id.* In doing so, we "consider only those circumstances that are consistent with the verdict," meaning we assume the jury believed the state's witnesses and disbelieved the defense's witness. *Id.* at 599.

Second, we review the circumstantial evidence as a whole and "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* In doing so, we independently examine "the reasonableness of all inferences that might be drawn from the circumstances proved." *Id.* "Circumstantial evidence must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *Al-Naseer*, 788 N.W.2d at 473.

*The circumstances proved*

The circumstances proved that are consistent with the verdict are as follows. Martinez-Mondragon initially, and during much of the interaction, provided officers with a false name and documents purporting to support that identification. After stepping out of the car, M.G.B. produced a gun that she concealed under her dress. M.G.B. carried the gun in a manner that required her to awkwardly get out of the car. The loaded firearm had a bullet in the chamber and was not in a holster or otherwise secured. After being asked if she had anything else on her, M.G.B. responded: "No I don't. I'm sorry. That's not even mine." When asked about the gun, M.G.B. stated "that is not mine, I don't give a f---."

6

Martinez-Mondragon was compliant with officers prior to the discovery of the firearm, but he attempted to flee moments after M.G.B. revealed the gun. While discussing the gun with police, Martinez-Mondragon asserted that "it is bad" in Minneapolis. Martinez-Mondragon continued to provide a false name until officers informed him that providing a false name would incur additional charges.

At the police station, Martinez-Mondragon asked officers if they could charge him with the gun and not M.G.B., noting "it wasn't really her fault." Martinez-Mondragon told officers he did not mean to "carry a gun . . . conceal and carry." When officers responded that he should get his permit to carry, Martinez-Mondragon responded it was "illegal" for him to carry a gun. Martinez-Mondragon took "full accountability for it" and expressed a willingness to stand in front of a judge and admit to the charges.

*The circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt*

Having determined the circumstances proved, we next consider whether those circumstances are consistent with guilt and inconsistent with any rational hypothesis other than guilt. *Silvernail*, 831 N.W.2d at 599. When viewed as a whole, we conclude the circumstances proved are inconsistent with any rational hypothesis other than guilt.

The circumstances proved demonstrate that Martinez-Mondragon knowingly exercised dominion and control over the firearm. Martinez-Mondragon tried to flee the moment the police discovered the gun, M.G.B. denied that the gun belonged to her, Martinez-Mondragon told the police he did not mean to conceal and carry a gun and repeatedly requested officers charge him with the gun offense and not M.G.B., and he

7

admitted he could not legally carry a firearm. We conclude these circumstances are consistent with guilt and inconsistent with any rational hypothesis other than guilt.

Martinez-Mondragon argues that the circumstances proved do not eliminate the rational hypothesis that he did not possess the firearm. However, in making this argument, Martinez-Mondragon relies on evidence that is inconsistent with the verdict, contrary to the applicable standard. *Silvernail*, 831 N.W.2d at 598.

Martinez-Mondragon also relies heavily on *State v. Bemboom*, No. A17-0188, 2017 WL 6567657 (Minn. App. Dec. 26, 2017), to argue that "[t]he circumstantial evidence allows an inference that appellant did not have an ability to exercise dominion and control over the gun." As a nonprecedential opinion, *Bemboom* is not controlling.

In addition, the circumstances proved in this case are distinguishable from those in *Bemboom*. In *Bemboom*, this court held that the evidence allowed a reasonable inference that the defendant did not know contraband was in his passenger's underwear until she informed him it was there. *Bemboom*, 2017 WL 6567657 at *7. This court also held that because the defendant did not actually cause the passenger to dispose of the contraband, the circumstantial evidence allowed for a reasonable inference other than guilt: that the defendant did not have an ability to exercise dominion and control over the contraband. *Id.* Ultimately, this court reversed because the circumstances proved presented a rational hypothesis other than guilt. *Id.* at *8.

The circumstances proved in this case go beyond the evidence present in *Bemboom*. M.G.B. made multiple statements that the firearm was not hers and there is no indication that similar statements were made by the passenger in *Bemboom*. Martinez-Mondragon

8

also made multiple statements connecting him to possession of the firearm and there are no comparable statements by the defendant in *Bemboom*. Additionally, holding a loaded firearm between one's legs is fundamentally different than holding a controlled substance in small packages in one's underwear considering the difficulty and danger involved with concealing a firearm in such a manner. These differences distinguish this case from *Bemboom*, making reliance on *Bemboom* unpersuasive.

Martinez-Mondragon also makes arguments for alternative inferences regarding his "evasive behavior" and attempted flight, contending none of his actions allow for "only an inference that he was trying to avoid getting caught possessing a gun." But our circumstantial evidence review does not require that the *only* inference drawn be that of guilt. Instead, guilt must be the only *reasonable* inference drawn. *Silvernail*, 831 N.W.2d at 599; *Al-Naseer*, 788 N.W.2d at 473. Because we hold Martinez-Mondragon's proposed alternative inferences regarding the circumstances proved are unreasonable, they are inconsistent with any rational hypothesis except that of guilt.

The circumstances proved support the conclusion that Martinez-Mondragon constructively possessed the gun that M.G.B. hid under her dress because "there is a strong probability (inferable from other evidence) that at the time [Martinez-Mondragon] was consciously or knowingly exercising dominion and control over [the gun]." *Harris*, 895 N.W.2d at 601. Because the circumstances are inconsistent with any rational hypothesis other than guilt, the evidence sufficiently supports the conviction.

9

**II.** **The state presented evidence, independent of Martinez-Mondragon's confession, reasonably tending to prove that he possessed the firearm.**

Martinez-Mondragon argues the state did not present evidence, independent of his confessions, that proved he possessed the gun. We disagree.

"A confession of the defendant shall not be sufficient to warrant conviction without evidence that the offense charged has been committed." Minn. Stat. § 634.03 (2020). The state must present evidence independent of a confession that reasonably tends to prove that the specific crime charged in the complaint actually occurred in order to sustain the defendant's conviction. *State v. Holl*, 966 N.W.2d 803, 814 (Minn. 2021). The state need not individually corroborate each element of the offense, and circumstantial evidence may be used to establish sufficient independent corroboration. *Id.*

Here, the state presented evidence of Martinez-Mondragon's attempt to flee moments after officers discovered the gun, M.G.B. holding a loaded gun between her legs, and statements by M.G.B. that the gun was not hers. This evidence provides independent support, separate from any confession offered by Martinez-Mondragon, that reasonably tends to prove that Martinez-Mondragon constructively possessed the firearm.

**III.** **Martinez-Mondragon's sentence for DWI does not require amendment.**

Martinez-Mondragon argues his gross-misdemeanor sentence for third-degree DWI must be amended from 365 days to 364 days. The state agrees that the statutory amendment applies and that the sentence should be amended.

Previously, the maximum sentence of imprisonment for gross misdemeanors was one year. Minn. Stat. § 609.0341 (2022). However, in 2023 the legislature enacted

10

Minnesota Statutes section 609.0342 which provides that "[a]ny law of this state that provides for a maximum sentence of imprisonment of one year or is defined as a gross misdemeanor shall be deemed to provide for a maximum fine of $3,000 and a maximum sentence of imprisonment of 364 days." 2023 Minn. Laws ch. 52, art. 6, § 6 (to be codified at Minn. Stat. § 609.0342 (Supp. 2023)).

This statute applies to Martinez-Mondragon because he pleaded guilty to a gross misdemeanor for the third-degree DWI. But the district court did not sentence Martinez-Mondragon to 365 days in jail, which would justify an amendment to 364 days. The court sentenced Martinez-Mondragon to 333 days with credit for time served on the third-degree DWI conviction. Accordingly, the district court's sentence complied with the new statute.

**Affirmed.**